IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROCTOR & GAMBLE COMPANY : <br>     PLAINTIFF, : <br> : <br>                                                 : <br> vs.                              : <br> : <br> ESTATE OF JEFFREY ROLISON  : <br> MARGARET M LOSINGER (nee Sjostedt) : <br>     DEFENDANTS, : <br> : | NO.: 3:17-CV-762-UN2 |

**ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS
OF DEFENDANT ESTATE OF JEFFREY ROLISON**

**ANSWER**

The Estate of Jeffrey L. Rolison, by its undersigned attorney, answers the Complaint for Interpleader as follows:

1. Admitted but averred that the Estate is solely entitled to those funds.

**THE PARTIES**

2. Admitted.

3. Admitted.

4. Admitted.

**JURISDICTION AND VENUE**

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

## BENEFITS UNDER THE PLANS

10.   Admitted but averred Estate's Decedent, consistent with the developed provisions and rules of Plaintiff's Plans, which reflected the technological advances in computers, the internet and online accounts, did validly designate account beneficiaries after his initial application for participation in the Plan, made through paper forms consistent with a less developed technological era.

11.  The Estate does not gainsay the allegation but is without knowledge or information to admit it.

12.   The Estate does not gainsay the allegation but is without knowledge or information to admit it.

## THE COMPETING CLAIMS

13.   Admitted but also averred that the PST Plan underwent a change in investment manager shortly before the Decadent's passing during which transition substantial online or digital data was lost including the then current elections of Decedent and other of Plaintiff's employees.

14.   Admitted that Defendant Losinger made this claim but averred she did without having and knowing she had no entitlement to it based on her conduct toward Decedent and the staleness of the 30-year old plan application.

15.    Admitted.

16.    Admitted. The Estate incorporates by reference the allegations of its Complaint before the Eastern District of Pennsylvania Federal Court at Civil Action Number 2017-cv-4401 ("Eastern District Suit"). It also notes the speciousness of asserting any position based on a 30-year old document.

17. Admitted but averred the dilemma faced by Plaintiff arises out of its mismanagement which resulted in data loss forcing it to resort to an ancient, improbable document as the last evidence of Decedent's designation of beneficiary.

## COUNT I: INTERPLEADER

18. Defendant Estate incorporates the foregoing allegations by reference.

19. Denied that Plaintiff is an innocent stakeholder insofar as the dilemma which prompted the need to resort to interpleader was substantially of its making. Admitted that Plaintiff is faced with a dilemma resolvable through an Interpleader action.

20. Admitted.

21. Admitted.

## COUNT II: CLAIM FOR EQUITABLE RELIEF
## PURSUANT TO SECTION 502(a)(3)(B)(ii) OF ERISA

22. Defendant Estate incorporates the foregoing allegations by reference.

23. Admitted.

24. Admitted and averred that Plaintiff's fiduciary duties extend to being diligent and responsible in accounting for the beneficiary designations of its Plan participants and the determination of their designated beneficiaries.

25. Admitted.

## COUNT III: PETITION FOR DECLARATORY RELIEF

26. Defendant Estate incorporates the foregoing allegations by reference.

27. Admitted that is Plaintiff's position.

28. Admitted that Defendant Estate has a colorable claim and that Plaintiff has treated Defendant Losinger's claim as if it were.

29. Admitted.

30. Admitted.

31. Admitted.

## AFFIRMATIVE DEFENSES

32. The foregoing allegations are incorporated by reference.

33. **FIRST AFFIRMATIVE DEFENSE.** The claim of Defendant Losinger should be barred as stale, inequitable, barred by State law, and by applicable statutes or laws of repose. Only the Estate is entitled to the Decedent's Plan benefits.

34. **SECOND AFFIRMATIVE DEFENSE.** Defendant Losinger has no basis or right to Decedent's Plan interests. The claim of Defendant Losinger arises from mistakes made by Plaintiff in its administration of the Plan and record keeping relating to the Plan and its employees' management of their individual accounts. She has no basis or right to any interest in Decedent's accounts.

35. **THIRD AFFIRMATIVE DEFENSE** Plaintiff is not entitled to attorneys' fees and costs. Plaintiff had a duty under the terms of the Plan to determine the proper beneficiary under the Plan. Instead of doing so, Plaintiff seeks a determination from this Court. Further Plaintiff created by its own actions, as described below, the dilemma to be resolved by interpleader. Plaintiff is not entitled to shift the cost of resolving the dilemma onto the Decedent's beneficiaries, embodied in his Estate, by seeking attorneys' fees in this action.

36. **FOURTH AFFIRMATIVE DEFENSE** Decedent Estate is informed and believes that it may have additional affirmative defenses available. It reserves the right to assert additional affirmative defenses after facts supporting those defenses are discovered.

## COUNTERCLAIM & CROSS-CLAIM

As a Counter-Plaintiff and Cross-Claim Plaintiff, Decedent's Estate states the following Counterclaim against Plaintiff and then Cross-Claim against Defendant Losinger, incorporating all of its foregoing allegations by reference:

37. Jurisdiction for this civil action arises under grounds stated in the Complaint and 28 U.S.C. § 1331 as a matter involving federal questions centered on 29 U.S.C. §1132(a).

38. Almost immediately after Decedent's passing on December 14, 2015, Plaintiff precipitously determined the only record it had of his designated beneficiary was his 30-year old paper application for participation in the Plan dated April 27, 1987 ("Enrolment Document").

39. The Enrolment Document identified Defendant Losinger, then by her maiden name Sjostedt, as the designated beneficiary space subject to the status "Co-habitor."

40. Defendant Losinger either improperly inserted her name without Decedent's knowledge or prevailed on him to do so on the basis of their relationship when, as Decedent shortly discovered, she had already completely breached that relationship by carrying on affairs with other men.

41. Defendant Losinger's prevailing on Decedent to name her beneficiary thus arose from fraud.

42. By information and belief, Plaintiff was not diligent in its search or investigation of Decedent's Plan designations and negligently seized on this ancient paper because it had failed to properly retain Decedent's records and elections, both online and otherwise.

43. Plaintiff's action was in direct contradiction of its knowledge of Decedent, notably that he was its managerial employee and thus adept at computer and online operations and that he had actively maintained his beneficiary designations through his online account.

44. In particular, Plaintiff knew Decedent had a romantic relationship with another of its employees, Mary Lou Murray, naming her beneficiary to his benefits and then removing her in favor of others after their amicably parting just a few years before his passing.

45. Plaintiff gave notice to Defendant Losinger of this 30-year Enrolment Document leading her to assert a claim without right or entitlement particularly knowing she had so betrayed Decedent as to cause him to part acrimoniously from her 27 years previously with no resumption of relations.

46. The 1987 Enrolment Form does not represent a valid designation by Decedent and is contradicted by all the circumstances of his life.

47. Decedent, to the knowledge of the Decedent Estate, had entered several other beneficiary designations superceding and replacing Defendant Losinger and demonstrably had done so with respect to other benefit or investment accounts.

48. Plaintiff defaulted to the ancient Enrolment Document in disregard of its longstanding regime promoting online account management by its employees.

49. Its employees for well over fifteen years have been predominantly managing their accounts online through password protected online accounts.

50. Plaintiff so acted because it lost Decedent's and other employees account data and documentation, this happening particularly in the transition from its longstanding Plan Administrator, JP Morgan Chase, to, Aeon Hewitt, which took place in the Fall of 2015 just three months prior to Decedent's passing.

51. A December 2012 Department of Labor Report by the Advisory Council on Employee Welfare and Pension Benefit Plans titled "Current Challenges and Best Practices Concerning Beneficiary Designations in Retirement and Life Insurance Plans," at page 3, recognized the

frequent occurrence of the problem the Decedent Estate alleges occurred here:

> Lost or stale beneficiary designations because of a change in service providers, administrators or other reasons may result in benefits under the plan that may not flow to the intended beneficiary.

See Report at: https://www.dol.gov/sites/default/files/ebsa/about-ebsa/about-us/erisa-advisory-council/2012 ACreport1.pdf

52. As a result, Plaintiff's then contemporaneous employee accounts and account record keeping did not reflect the actual terms elected by its employees which formed the basis of the "contracts" which Plaintiff was duty bound to uphold as a fiduciary.

53. By information and belief, most of Plaintiff's employees realized and/or were noticed that their Investment Accounts settings had been lost and were able to act to restore them.

54. Decedent, however, passing away only three months after the data loss, had no notice of the loss and the need to update his account designations.

55. Plaintiff failed in its duty to provide Decedent with timely notice of the data loss to allow him to make correction.

56. Plaintiff also failed in not having taken steps to preserve and update the account elections of Decedent and its other employees in hard document form to protect against the recognized problem of digital data loss.

57. By information and belief, Plaintiff has acted to avoid liability for its negligence or breach of fiduciary duty in failing to properly maintain its employees' investment accounts, particularly with respect to individuals like Decedent, who passed before having the opportunity to correct the damage.

58. Plaintiff was also negligent in conducting only a cursory investigation into Decedent's

account information and seizing on the Enrolment Document form as an initial indication of beneficiary.

59. Decedent's Estate has requested Plaintiff to provide full documentation for Decedent relating to his Plan interest but Plaintiff has failed to do so.

60. Decedent Estate also incorporates by reference allegations stated in its Complaint against Plaintiff and Defendant Losinger filed in the Eastern District Suit, concerning collusive action between Plaintiff, by its employees, and Defendant Losinger and her attorney to unjustly foreclose its rights to Decedent's Plan interests.

## ERISA FIDUCIARY STANDARDS

61. The Employee Retirement Income Security Act of 1974, or ERISA, imposes strict fiduciary duties of loyalty and prudence upon Plaintiff as a fiduciary of the Plan which benefits its employees. The statute states, in relevant part, that, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a). The standard for the level of expertise to which fiduciaries are held is that of a prudent expert in financial matters.

## COUNTERCLAIM AGAINST PLAINTIFF

62. By the foregoing described conduct, Plaintiff, as a fiduciary, failed to:

    a. to discharge its duties with respect to the Plan solely in the interest of the

participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b. to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

63. By foregoing described actions, Plaintiff has failed to uphold and multiply breached its duties to Decedent's right and interests in his Plan which duty it also owes to his Estate. Its violative actions include:

a. Its loss of the online account records of and elections made by Decedent pertaining to his interest in the Investment Plans;

b. Its irresponsible and precipitous holding up of the 30-year Enrolment Document as a basis for any consideration of Decedent's beneficiary designation to cover up its loss of data and any potential liability flowing therefrom;

c. its refusal to provide the Estate with full disclosure of Decedent's account information and documentation; and

d. by collusively acting with the wrongful designated beneficiary to foreclose the rights of the Estate so that it could close out the Investment Plan Accounts and limit liability.

**WHEREFORE,** Decedent's Estate prays the Court:

A. Order that Plaintiff pay to it the value of Decedent's Plan accounts;

B. Award it attorneys fees and costs pursuant to ERISA section 502(g), 29 U.S.C.

Section 1132(g);

    C. Award it such other and further relief as the Court deems equitable and just.

## CROSS-CLAIM AGAINST DEFENDANT LOSINGER

64. Decedent's Estate incorporates by reference its foregoing allegations.

65. By information and belief, Decedent opened his home and life to Defendant Losinger, creating a relationship leading to her being identified as his "co-habitor" on the Enrolment Document as a consequence of his being in a faithful romantic relationship with her.

66. Defendant Losinger had falsely misrepresented to Decedent their relationship to be faithful and/or that it would remain so and by this means and only these means induced him to name her as his beneficiary on false pretenses because in actuality she had not been faithful before or during her co-habitation with Decedent.

67. Decedent would not otherwise have designated Defendant Losinger, having many whose affiliation and affection would have dictated his choice.

68. The co-habitation relationship, which formed the only basis in Defendant Losinger to any claim consideration from Decedent, ended not long after the making of the Enrolment Document on Decedent's discovery she had been unfaithful to him and had her leave his home.

69. Defendant Losinger thus ceased, as of approximately May 1989, to have any relationship with Decedent, and lost her status as co-habitor, and thus further forfeited, by the qualifying provision of the Enrolment Document identifying her as such, any right to be Decedent's beneficiary or to have any right or claims, relative to those actually entitled to benefit by Decedent, most particularly including his Estate.

70. Sometime early in 1990, Defendant Losinger married one of the men with whom she had been unfaithful to Decedent, taking his name which she still retains, thereby fully

supplanting all right to any claim in her against Decedent's rights and interests.

71.   Defendant Losinger then further acted to terminate any relationship by returning within a year to steal the furnishings from his home.

72. Contractually as between Decedent and Defendant Losinger, there was no consideration for her continuing to enjoy her beneficiary status, and there had been a failure of consideration from the onset by reason of her ongoing unfaithfulness to him.

73. Further, Defendant Losinger's conduct was inequitable and thus barred, she having obtained her putative status as beneficiary as a result of either forgery or fraud and other wrongful conduct.

74.   Decedent's Estate is a third party beneficiary of Decedent's Plan interests and rightful heir or successor to those interests.

75.   Defendant Losinger has no right or entitlement to Decedent's Plan interests relative to the Decedent Estate even were the Enrolment Document to be determined by the Court to govern Plaintiff's ERISA obligations to Decedent.

76.   For the aforementioned reasons, Defendant Losinger has no right or entitlement to the Investment Plan accounts of the Decedent.

**WHEREFORE,** Decedent's Estate prays the Court:

    A. Determine and order that the designation of Defendant Losinger as beneficiary in the Enrolment Document is void, directing that Plaintiff make distribution of all Plan proceeds to it;

    B. In the event that Plaintiff is determined to be governed by the Enrolment Document under ERISA, find Defendant Losinger liable over to the Estate based on, <u>inter alia</u>, her breach of contract, fraudulent conduct and having no right to Decedent's Plan benefits;

    C. Impose a constructive trust on Defendant Losinger in favor of the Estate;

D. Award it such other and further relief as the Court deems equitable and just.

GOULD LAW ASSOCIATES, PC

*[signature: David F. Gould]*

Dated: July 10, 2017

David F. Gould III, Esq.
Attorney I.D. No.  48046
Counsel to Defendant Estate of Jeffrey Rolison
Gould Law Associates, PC
20 S Pine Street
Doylestown, PA 18901
215-345-8933; dfg3law@gmail.com
(Application for Admission pro hac vice to
be filed)