IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PROCTOR & GAMBLE U.S. BUSINESS SERVICES COMPANY, as Plan Administrator and on Behalf of THE PROCTOR & GAMBLE PROFIT SHARING TRUST AND EMPLOYEE STOCK OWNERSHIP PLAN and THE PROCTOR & GAMBLE SAVINGS PLAN<br>　　　　Plaintiff,<br><br>　　　　　　　v.<br><br>ESTATE OF JEFFREY ROLISON, deceased, and MARGARET M. LOSINGER,<br>　　　　Defendants. | CIVIL ACTION NO. 3:17-CV-00762<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before this Court is a Motion to Dismiss Defendant Estate of Jeffrey Rolison's Counterclaim filed by Plaintiff Proctor & Gamble U.S. Business Services Company ("P&G"). This Motion will be denied because the Estate sufficiently alleged that P&G was responsible for the underlying ownership dispute due to a loss of Rolison's controlling beneficiary designation.

**I.　　　Background**

**A. Factual History**

P&G is the administrator of the P&G Profit Sharing Trust and Employee Stock Ownership Plan, and the P&G Savings Plans (collectively "Retirement Plans"). Employees of P&G are offered participation in the Retirement Plans to support their accumulation of retirement income. Jeffery Rolison ("Rolison") worked for P&G and

1

participated in the Retirement Plans. In fact, Rolison accumulated a significant sum of money in these retirement accounts: approximately $750,000.[1]

Rolison died on December 14, 2015, shortly before his planned retirement.

Following Rolison's death Margaret Losinger, Rolison's ex-wife, made a claim on the P&G Retirement Accounts. Losinger believed she was entitled to the Retirement Accounts because she was the sole beneficiary named on the Accounts' beneficiary forms executed by Rolison on April 27, 1987.[2] The Estate of Jeffrey Rolison ("Estate") has also made a claim on the Retirement Accounts. The Estate alleges that Rolison updated the beneficiary designation for the Retirement Accounts at some time after April 27, 1987, but P&G lost that information. Specifically, The Estate avers that P&G suffered a substantial data loss when P&G "transitioned from its longstanding Plan Administrator, JP Morgan Chase, to, Aeon Hewitt," which resulted in the loss of Rolison's updated beneficiary information. Notably, the Estate has yet to offer any evidence which suggests an alternate designation was made by Rolison after April of 1987 or that P&G sustained any data loss.

**B. Procedural History**

P&G filed a Complaint seeking Interpleader on April 28, 2017—naming the Estate and Losinger as Defendants—to determine the proper ownership of Rolison's retirement accounts. (*Doc.* 1.) The Estate answered this Complaint on July 10, 2017. (*Doc.* 13.) This Answer raised a cross claim against Losinger and a counterclaim

---

[1] As of April 19, 2017, Rolison was entitled to $745,774.12 from the P&G Profit Sharing Trust, and $8,232.44 from the P&G Savings Plan.

[2] The name that appears on the beneficiary form is Margaret Sjostedt. Losinger used this name at the time the beneficiary form was completed.

against P&G. Losinger responded to the Estate's cross claim on August 15, 2017 and answered the Complaint on October 26, 2017. (*Docs.* 17, 25.)

On August 31, 2017, P&G filed a Motion to Dismiss the Estate's counterclaim. (*Doc.* 19.) This motion has been fully briefed and is ripe for disposition.

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a counterclaim, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a [party] must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the [pleading] establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a counterclaim, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). The same holds true for a counterclaim. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### III. Discussion

### A. Appropriateness of Interpleader Counterclaim

The Third Circuit has made clear that a valid interpleader action shields a stakeholder-plaintiff from further liability to claimant-defendants "not only with respect to the amount owed, but also with respect to counterclaims brought by the claimants." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 259 (3d Cir. 2009). But, this shield does not offer an "all-purpose get-out-of-jail-free card" to Plaintiffs asserting interpleader actions. *Id.* at 265. In *Hovis*, the Third Circuit was asked to address exactly when a Plaintiff pursing an interpleader action was shielded from counterclaim liability. *Id.* at 259. There, the court held that such a Plaintiff is shielded from counterclaim liability only if "(1) the stakeholder bears no blame for the existence of the ownership controversy and (2) the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants. *Id.* The Third Circuit is not alone in only affording protection to stakeholders who bear no blame for the underlying dispute. *See, e.g.*, *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1012 (9th Cir. 2012) ("'[M]any courts have held that those who have acted in bad faith to create a controversy over the state may not claim the protection of interpleader."); *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988) ("It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and

4

where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader."). Here, there is no question that the counterclaim raised by the Estate directly relates to P&G's failure to resolve the underlying dispute. Thus, the only question before this Court is whether the Estate has properly pled that P&G bears at least some of the blame for the existence of the current ownership dispute.

The Estate argues that P&G was responsible for the underlying ownership dispute because P&G failed to notify Rolison of a data loss that compromised his beneficiary information. Specifically, the Estate alleges that P&G breached its fiduciary duty when it lost "the online account records of and elections made by [Rolison] pertaining to his interest in the Investment Plans." Absent this loss, the Estate contends that the ownership dispute would not have occurred. While ultimately holding that the interpleading Plaintiff was shielded from counterclaim liability, the *Hovis* Court explicitly noted that its decision was "potentially consistent with holding a [Plaintiff] liable for its investigation of ownership of the state, at least where defects in its investigation can plausibly be blamed for the existence of the underlying ownership controversy." Unlike the claimant in *Hovis* who argued that the stakeholder was negligent for failing to interview individuals to timely determine ownership, Rolison's Estate pleads that absent a data loss P&G would have been able to determine proper ownership and the current dispute would not exist. It appears that this is the exact scenario envisioned by the Circuit in *Hovis*: an independent counterclaim within a larger interpleader action may be sustained when a failure by the stakeholder caused an ownership dispute.

Remember, Plaintiff's Motion comes before this Court pursuant to Federal Rule of Civil Procedure 12(b)(6). This means that I am tasked to determine whether a *plausible* claim exists. *Iqbal*, 556 U.S. at 678. Based on Defendant's pleadings, viewed in the light most favorable, and the Third Circuit's decision in *Hovis*, I find that the Estate has raised a plausible claim that may be independent from the interpleader by P&G.[3] Thus, P&G's Motion to Dismiss will be denied.

### IV.　　Conclusion

P&G's Motion to Dismiss will be denied because the Estate has properly alleged that P&G is responsible for the current ownership dispute.

An appropriate order follows.

Date: February 6, 2018

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

---

[3] Notably, this does not suggest that the Estate's counterclaim is fruitful. To date, the Estate has offered no evidence to suggest the alleged data loss occurred, and P&G has denied the existence of a data breach. Questions related to the existence of the data loss, however, are properly raised upon motion for summary judgment.