# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY, as Plan Administrator and on Behalf of THE PROCTER & GAMBLE PROFIT SHARING TRUST AND EMPLOYEE STOCK OWNERSHIP PLAN and THE PROCTER & GAMBLE SAVINGS PLAN<br><br>    Plaintiff,<br><br>    v.<br><br>ESTATE OF JEFFREY ROLISON, Deceased, MARGARET M. LOSINGER, and MARY LOU MURRAY<br><br>    Defendants. | No. 3:17-CV-00762<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before me is Defendant Estate of Jeffrey Rolison's ("Estate") Motion for Leave to Amend its counterclaim and crossclaims (Doc. 48) and Defendant Margaret M. Losinger's[1] Motion to Dismiss Plaintiff Proctor & Gamble U.S. Business Services Company's ("P&G") Amended Complaint (Doc. 54). Defendant Estate's Motion for Leave to Amend is proper under Rule 15(a)(2) of the Federal Rules of Civil Procedure and will therefore be freely given. Defendant Losinger's Motion to Dismiss will be dismissed as untimely.

## I. Background

**A. Factual Background**

This dispute arises out of competing claims to the assets of Jeffrey Rolison ("Rolison" or "Decedent") following his death on December 14, 2015. Doc. 44 ¶ 15.

---

[1] Defendant Losinger's name is currently Margaret M. Losinger. At the time of the relevant events, her name was Margaret Sjostedt. Doc. 44 at ¶ 16.

Rolison had been employed by P&G for approximately twenty-eight years at the time of his death. Doc. 48-1. At some point during his tenure with P&G, Rolison enrolled in two company savings plans: (1) the "PST Plan"[2] and (2) the "Savings Plan."[3] Doc. 44. As of April 19, 2017, Rolison would have been entitled to $745,774.12 from the PST Plan and $8,232.44 from the Savings Plan.

Participants in the PST Plan were permitted to "designate account beneficiaries in accordance with the documents and instruments governing the PST Plan." Doc. 44. at ¶ 12. If a participant in both plans designated a beneficiary for the PST Plan, that beneficiary would also be "applied to the Savings Plan[.]" *Id.* at ¶ 13.

Shortly after Rolison's death, both Losinger and the Estate asserted claims for the benefits under Rolison's PST and Savings Plans. Doc. 59 at 5-6. Losinger is allegedly one of Rolison's former romantic partners. Doc. 48-1 ¶ 47. She is presently married to Chester L. Losinger, with whom she shares two sons. *Id.* ¶ 50. The Estate is represented by Rolison's brother. Doc. 55 at 6 n.6. Losinger claims she is entitled to the funds because her name, Margaret Sjostedt, was the only name listed on any beneficiary designation form. Her name appears on a form completed by Rolison on April 27, 1987 for his PST Plan application. Doc. 44 ¶ 18. The Estate has consistently challenged the legitimacy of Losinger's claim to Rolison's assets, though some of the underlying reasons for this challenge have changed over time. *Id.* ¶ 17; Docs. 13, 48-1.

On or about May 7, 2018, after litigation had already commenced, Defendant Mary Lou Murray ("Murray") reached out to P&G to assert a claim to the funds in

---

[2] According to P&G, the PST Plan was created to help its employees save for retirement. Doc. 44 ¶ 12. Under the PST Plan, "P&G makes annual contributions of P&G Preferred stock and cash, which is immediately invested in P&G Common stock, to participant accounts." *Id.*

[3] P&G describes the Savings Plan in its Amended Complaint as well: "The Savings Plan was established on July 1, 2007, as a separate 401(k) plan that included assets transferred from the PST Plan." Doc. 44 ¶ 13.

Rolison's PST and Savings Plan accounts. Doc. 44 ¶ 19. Murray alleges she is Rolison's common law spouse and therefore entitled to the funds. *Id.*

B. **Procedural History**

On August 12, 2016, the Estate filed a lawsuit against P&G and Losinger alleging Rolison made changes to his beneficiary designation after initially naming Losinger as the beneficiary. *Estate of Jeffrey Rolison v. Proctor & Gamble Company and Margaret Losinger*, No. 16-cv-4401 (E.D. Pa. Aug. 12, 2016). The Estate voluntarily dismissed this claim on August 22, 2016. Doc. 58 at 7.

On April 28, 2017, P&G filed a complaint for interpleader pursuant to Rule 22 of the Federal Rules of Civil Procedure, naming the Estate and Losinger as defendants. Doc. 1. The Estate filed an answer and asserted a counterclaim against P&G and a crossclaim against Losinger on July 10, 2017. Doc. 13. The Estate's counterclaim alleges P&G breached its fiduciary duties under ERISA by losing Rolison's records which would show he changed the beneficiary designations on his PST and Savings plans. *Id.* The Estate's crossclaim alleges the initial designation of Losinger is not supported by consideration because Losinger engaged in fraud by having an affair while in a purportedly monogamous relationship with Rolinson. *Id.* Losinger answered the Estate's crossclaim and asserted its own crossclaim against the Estate on August 15, 2017, alleging defamation, attempted fraud, and interference with P&G's discharge of its fiduciary duties. *See generally* Doc. 17.

On August 31, 2017, P&G filed a Motion to Dismiss the Estate's counterclaim, which was denied on February 6, 2018. Docs. 19, 38, 39. On November 9, 2017, Losinger filed a joint Motion to Dismiss and Motion for Summary Judgment.[4] Docs.

---

[4] Losinger's joint Motion for Summary Judgment and Motion to Dismiss, entitled "Defendant, Margaret M. Losinger's, Motion for Summary Judgment and Motion to Dismiss Plaintif's Complaint for Interpleader, Counterclaims, and Crossclaims of Co-Defendant, Estate of Jeffrey Rolison[,]" does not delineate the type of action sought on each of these claims. *See generally* Doc. 26. Indeed, the text of the Motion mentions only that Losinger moves for dismissal of all claims under

26, 27. On February 13, 2018, the Court entered a case management order following the parties' conference and discussions. Doc. 41.

By May 2018, Murray reached out to P&G to assert a claim to the funds from Rolison's PST and Savings Plans. Doc. 44 ¶ 19. Consequently, on June 22, 2018, P&G filed an Amended Complaint for interpleader that included Murray as a defendant. Doc. 44. On June 29, 2018, the Estate answered the Amended Complaint and filed a Motion to Amend/Correct its previously filed counterclaim and crossclaims. Docs. 48, 48-1. Losinger filed its answer to P&G's Amended Complaint and the Estate's counterclaim and crossclaims[5] on July 13, 2018. Doc. 50. Five days after filing its answer to P&G's Amended Complaint, Losinger filed a "Combined Motion Opposing Amendments to Estate's Counterclaim and Crossclaims and Motion to Dismiss Plaintiff's Amended Complaint for Interpleader."[6] Docs. 54, 55.

Both the Motion to Dismiss and Motion for Leave to Amend/Correct have been fully briefed and are ripe for review.

---

Rule 12(b)(6) of the Federal Rules of Civil Procedure. Losinger's supporting brief, entitled "Defendant, Margaret M. Losinger's, Memorandum in Support of Motion for Summary Judgment and Motion to Dismiss Plaintiff's Complaint for Interpleader, Counterclaims, and Crossclaims of Co-Defendant, Estate of Jeffrey Rolison" similarly does not distinguish the claims for which Losinger sought summary judgment from the claims for which Losinger sought dismissal. Doc. 26-1. Indeed, Document 27 appears to be the same brief that was filed as Document 26-1.

[5] It is unclear whether Losinger, in Document 51, answered the proposed Amended Counterclaim and Crossclaims, or whether Losinger filed a second answer to the Estate's initial counterclaim and crossclaims in Document 13. Doc. 51.

[6] I am unable to distinguish arguments made in support of Losinger's Motion to Dismiss from those made in support of its Brief in Opposition to the Motion for Leave to Amend/Correct, as counsel for Losinger did not clearly delineate these positions in its Combined Motion or brief in support. Docs. 54, 55.

4

## II. Legal Standards

### A. Motion for Leave to Amend

Motions to Amend are governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that a party may only amend a pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Red. R. Civ. P. 15(a). In all other cases, a party may amend its pleading only with the opposing party's written consent, or with leave of the court. Fed. R. Civ. P. 15(a)(2). Courts should freely grant leave to amend "when justice so requires." *Id.* Rule 15 of the Federal Rules of Civil Procedure counsels courts to adopt a liberal approach to permitting amendments to pleadings.

Consistent with the plain language of this rule, courts have discretion in deciding whether to grant leave to amend; however, a motion for leave to amend should be denied if the plaintiff's delay in seeking the amendment is motivated by bad faith, granting the amendment would be prejudicial to the opposing party, or where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### B. Motion to Dismiss: Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

### III. Discussion

**A.   Motion for Leave to Amend/Correct**

The Estate seeks to amend its counterclaim and crossclaims because of new information it has received over the course of the discovery process as well as the addition of Defendant Murray through P&G's Amended Complaint. Doc. 48 ¶¶ 7, 10. The Estate's Proposed Amendment asserts a new underlying theory for its counterclaim against P&G for breach of its fiduciary duties under ERISA—that P&G failed to disclose material information to Rolison concerning his beneficiary designations. *Id.* at ¶¶ 66-69. Additionally, the Estate's Proposed Amendment adds a crossclaim against Murray, asserting her alleged common law marriage to Rolison does not support her claim to the funds in Rolison's accounts. Doc. 48-1 ¶¶ 88-92. P&G opposes the Motion as futile and proposed in bad faith. Both P&G and Losinger oppose the motion as unduly prejudicial.

**1.   Futility**

An amended pleading is "futile" if it fails to state a claim for which relief could be granted. *Grayson v. Mayview State Hosp.* 293 F.3d 103, 113 (3d Cir. 2002). Such a case exists where the statute of limitations or some other defense would compel dismissal of the claim; thus, if a statute of limitations has expired or some other legal defense bars the moving party's proposed claims, leave to amend should be denied. *Id.* Under this futility standard, "if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

The Estate's proposed amendment rests on the assertion that by failing to provide "simple, positive notice to Decedent of the ongoing effect of the Enrolment [*sic*] Document as to his beneficiary designation or inform him positively as to whom,

7

under its Plans and related documentation . . . [] it considered or might consider his beneficiary to be" P&G breached its fiduciary duties under ERISA, as such information is "material." Doc. 48-1 ¶¶ 54, 66-69.

P&G contends the Estate's proposed amended counterclaim is futile because P&G has already produced documents showing "all Plan participants, including Rolison, on multiple occasions were provided with the information about their existing beneficiary designations and how to change them." The examples of such documents that have been provided appear to be standardized, impersonal scripts and general instructions sent to a large number of plan participants. While P&G fairly notes that Rolison did in fact receive information from P&G pertaining to beneficiary designations generally, it is not clear whether this alleged information contains the positive, individualized notice of Rolison's beneficiary elections the Estate alleges P&G was required to disclose. Doc. 58 at 15-16. Further, as noted by the Estate, P&G's notice to Rolison that he did not have a designated online beneficiary could support an inference on Rolison's part that he did not have a beneficiary listed on his plans at that time. Doc. 68 at 4. Because these documents could show P&G did not provide affirmative or even unambiguous notice of Rolison's beneficiary elections, the amended counterclaim is not futile.

 **2. Bad Faith**

P&G argues that the Estate knew its initial counterclaim was not supported by evidence at the time of filing and therefore proceeded in bad faith by waiting to assert its amended counterclaim until now. *Id.* at 16-17. In support of its position, P&G cites to a brief seven sentence-long email sent from Vicky Shelton to Rolison's Estate dated April 14, 2016 which states, "all Plan records, including beneficiary designations, have been properly and completely maintained both while at our prior, longstanding record keeper (JPMorgan/Empower Retirement) as well as during and after conversion to the current record keeper, Aon Hewitt." Doc. 58-2. In light of Rule 15(a)(2)'s "liberal" leave to amend standard, this single conclusory email is not

8

sufficient to support P&G's contention that the Estate actually knew in April 2016 its lost records theory from the initial counterclaim was not supported by evidence.

P&G depicts the Estate's Motion as part of a sinister plan to burden the parties for an entire year with a case theory it knew to be unsupported by evidence to buy the Estate time to "revise its theory to one better suited to its purposes." Doc. 58 at 14. The Estate's actions do not support this characterization. For example, the Estate credibly contends that it gave both written and oral notice of its changed theory of the case to the opposing parties more than one month before filing this Motion. Doc. 48 ¶¶ 1, 12. P&G has not shown that the Estate knew its initial counterclaim was not supported by evidence at the time of filing, and has therefore failed to show bad faith by the Estate.

### 3. Prejudice

Undue prejudice is viewed as the "touchstone for the denial of leave to amend." *Heyl & Patterson Int'l, Inc. V. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 225 (3d Cir. 1981) (quoting *Cornell and Company, Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978)) (citations omitted). To show undue prejudice, the opposing party must demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts of evidence" unless leave to amend is denied. *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

P&G argues it will be prejudiced by having to "start the discovery process anew, issuing new written discovery, and otherwise adjusting [] defenses." Doc. 58 at 19. Given the nature of P&G's interpleader complaint, allowing the Estate, a potential beneficiary, to assert additional plausible positions in favor of its claim to Rolison's funds will not unfairly disadvantage or deprive P&G of the opportunity to present additional facts, even though it may require additional work.

Losinger argues that she will be prejudiced because as the "sole named beneficiary," she "is incurring significant expense and loss" on both the "claims of the other defendants and failure of Plaintiff to uphold its fiduciary duty to distribute the

plan assets in accordance with ERISA, The Plan Documents and the beneficiary election form." Doc. 57 ¶ 12. Essentially, Losinger's position is that she will be prejudiced if she has to expend further resources in continuing to stake her claim to the funds from Rolison's accounts. This is not the type of prejudice against which the limitation on the Court's discretion to grant leave to amend was intended to safeguard. Instead, it is merely a potential consequence of engaging in litigation. Additionally, even if this Court were to find this alleged prejudice is undue, denying the Estate's Motion would not protect her, as its source is the litigation in its entirety, rather than the Estate's Motion in particular.

Neither P&G nor Losinger will be unfairly prejudiced by granting the Estate's Motion for Leave to Amend. Accordingly, I will grant the Estate's Motion for Leave to Amend.

**B.** **Motion to Dismiss**

Losinger argues that her Combined Motion to Dismiss and Opposition to the Motion for Leave to Amend should be converted into a Motion for Summary Judgment pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because she has referred to matters outside the pleadings. Doc. 55 at 11-12. Under this conversion rule, "[a] trial judge has the discretion to consider evidence outside the complaint in ruling on motions to dismiss." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). A district court has discretion to "expressly disclaim[] the use of intrinsic evidence in deciding a motion to dismiss . . . 'even where additional materials were admitted into the record.'" *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 133 n.9 (3d Cir. 2016) (quoting *Kulwicki*, 969 F.2d at 1462). As discussed below, because I do not rely on any facts from outside evidence in deciding the 12(b)(6) Motion to Dismiss component of Losinger's Combined Motion, it will not be converted into a Rule 56 motion for summary judgment. *See Fagin v. Gilmartin*, 432 F.3d 276, 286 (3d Cir. 2005) ("If facts relied on from the outside evidence is included, then conversion would be appropriate.").

10

Losinger filed this Combined Motion to Dismiss and Opposition to the Motion for Leave to Amend on July 18, 2018, five days after answering P&G's Amended Complaint. Docs. 50, 54, 55. Losinger's Motion to Dismiss is therefore untimely under Rule 12(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b) (requiring 12(b)(6) motions to dismiss for failure to state a claim to be filed "before pleading if a responsive pleading is allowed" or concurrently with the responsive pleading).

In the Third Circuit, courts may treat an untimely filed 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings. *See Trustees of the Univ. of Pa. v. Mayflower Transit*, No. 97-1111, 1997 U.S. Dist. LEXIS 14577, at *4 (E.D. Pa. Sept. 16, 1997) ("This court has previously held that a motion to dismiss under Rule 12(b)(6) mad after an answer has been filed may be treated, in the court's discretion, as a 12(c) motion for judgment on the pleadings."). *Cf. Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991) ("Because [a party] filed its [Rule 12(b)] motion after it has already filed an answer, the motion must be considered a Rule 12(c) motion.").

A Rule 12(c) motion for judgment on the pleadings may be made "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). Because the Estate's Motion for Leave to Amend will be granted, the pleadings remain open. *See* 5 CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2005 & Supp. 2018) ("[P]leadings are closed upon the filing of a complaint and an answer . . . unless a counterclaim, cross-claim, or third party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim, answer, or third-party answer will normally mark the close of the pleadings."). Because the pleadings have not yet been closed as a result of the Estate's presently unanswered amended counterclaim and crossclaims, Losinger's untimely 12(b)(6) Motion to Dismiss may not be converted into a 12(c) motion for judgment on the pleadings and will therefore be denied as untimely.

## IV. Conclusion

For the above stated reasons, the Estate's Motion for Leave to Amend will be granted and the Motion to Dismiss component of Losinger's Combined Motion to Dismiss and Opposition to the Estate's Motion for Leave to Amend will be denied.

An appropriate order follows.

October 19, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge