IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE PROCTER & GAMBLE U.S.          :
BUSINESS SERVICES COMPANY,         :
as Plan Administrator and on Behalf :
of THE PROCTER & GAMBLE PROFIT     :
SHARING TRUST AND EMPLOYEE         :
STOCK OWNERSHIP PLAN and THE       :
PROCTER & GAMBLE SAVINGS           :
PLAN                               :
                                   :
            Plaintiff,             :
     v.                            :        3:17-CV-762
                                   :        (JUDGE MARIANI)
ESTATE OF JEFFREY ROLISON,         :
Deceased, MARGARET M.              :
LOSINGER, and MARY LOU MURRAY      :
                                   :
            Defendants.            :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are cross-motions for summary judgment filed by

Defendant Estate of Jeffrey Rolison ("the Estate"), ( Doc. 86), and Defendant Margaret M.

Losinger ("Losinger"), (Doc. 84)[1], on Plaintiff Procter & Gamble U.S. Business Services

---

[1] While alternatively labelled as a motion to dismiss, Losinger's motion, which seeks judgment as a matter of law and which references matters outside the complaint, is best construed as a motion for summary judgment.  *See, e.g., Gudalefsky v. Pennsylvania Dept. of Transp.*, 2007 WL 295397, at *1 (M.D. Pa. 2007) (construing motion to dismiss as motion for summary judgment); *Palmer v. Dauphin County Prison*, 2005 WL 2456262, at *2 (M.D. Pa. 2005) (same); *Davis v. U.S.*, 2005 WL 2465852, at *2 (M.D. Pa. 2005) (same).  This is consistent with the recent letter from Losinger's attorney describing her motion as one for summary judgment.  (*See* Doc. 90).  To the extent this motion is one to dismiss the complaint, no notice of conversion to a motion for summary judgment would be required in this case as the motion was

Company's ("P&G") interpleader action.  The Plaintiff brought this action, under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, in its

capacity as Plan Administrator and on behalf of The Procter & Gamble Profit Sharing Trust

and Employee Stock Ownership Plan and The Procter & Gamble Savings Plan ("the

Plans"), in order to determine who, of the Defendants,[2] is entitled to the Plans' funds in the

wake of Jeffrey Rolison's ("Rolison" or "decedent") death.  (*See* Doc. 44).

The Plaintiff initially filed this complaint in April 2017, (*see* Doc. 1), before filing an

amended complaint in June 2018, (*see* Doc. 44), adding Mary Lou Murray as a defendant.

Defendants Estate and Losinger have answered the complaint asserting their right to the

disputed funds while also asserting counterclaims against P&G, with the Estate further

asserting crossclaims against Losinger and Murray.  (*See* Docs. 54, 78, 79).  All the claims

have survived motions to dismiss by both P&G and Losinger, (*see* Docs. 38-39, 69-70),

after which, the Court set the date to submit dispositive motions as October 2019.  (*See*

Doc. 81).  The Court, upon a June 5, 2020 status conference with the parties, further

ordered additional briefing on certain issues with and contained in the motions.  (*See* Doc.

---

clearly alternatively referred to as one for summary judgment.  *See Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).
     [2] The third Defendant in this action, Mary Lou Murray ("Murrary"), did not file a motion for summary judgment and has otherwise not participated in this action since informing P&G of her claim and being ordered to obtain counsel or be considered to be proceeding *pro se*.  (*See* Docs. 55, 56).

94).  Accordingly, the instant motions have been filed and fully briefed, (*see* Docs. 84-89, 96, 99, 101-02), and are now ripe for review.[3]

For the reasons set forth below, the Court will grant Defendant Losinger's Motion and deny the Defendant Estate's Motion.

## II. STATEMENT OF MATERIAL FACTS

Jeffrey Rolison was an employee at Procter & Gamble for nearly 30 years leading up to his death on December 14, 2015.  (Docs. 44 (P&G's First Amended Complaint for Interpleader), 50 (Defendant Losinger's Answer to First Amended Complaint for Interpleader), and 78 (Defendant Estate's Amended Answer, Counterclaims and Crossclaim) at ¶ 15).  Over the course of his employment, Mr. Rolison accumulated a total of $754,006.56 in benefits plans' savings, which, as a result of his death, are to be distributed to his beneficiary or beneficiaries.  (*Id*. at ¶¶ 12-14).  As of April 17, 1987, the named beneficiary of the Plans, as indicated by a paper document filled out and signed by Mr. Rolison, was Margaret M. Sjostedt, now known as Margaret M. Losinger.  (*Id*. at ¶ 16; Docs. 101 (Statement of Material Facts of Estate of Jeffrey Rolison) and 102 (Defendant,

---

[3] The Court notes further that while Losinger's motion alternatively requests default judgment against Mary Lou Murray, (*see* Doc. 84), the motion will primarily be evaluated as a summary judgment motion.  *See, e.g., Primerica Life Insurance Company v. Coleman*, 2017 WL 4711436, at *1 (M.D. Pa. 2017) (dismissing alternative motion for default judgment as moot given disposition of simultaneous summary judgment motion).  Further, because Murray has not responded to the motion, it will be evaluated as an unopposed motion.  *Good-O Beverage, Inc. v. Lion Brewing Company*, 2010 WL 11678256, at *2 (M.D. Pa. 2010).

Margaret M. Losinger's, Response to the Estate's Statement of Material Facts) at ¶ 3; *see also* Doc. 26-2 Ex. B (Plans' Participation Form)).

Throughout the course of his 29-year employment, Mr. Rolison was periodically informed by the P&G, even as recent as August 2015, that:

> A primary beneficiary for [the Plans] has not been designated online. . . . Beneficiaries designated using paper forms are still valid but will not be reflected on this statement unless they are entered into the online system, if available for [the Plans].

(Doc. 86-3 at 3 (citing Doc. 86-2 at Admission Nos. 15, 24-25 (P&G's Responses to Request for Admissions from Defendant Estate)); *see also* Docs. 84 (Defendant Losinger's Motion for Summary Judgment to Interpleader Complaint and to Defendant Estate's Counterclaim and Crossclaims) and 87 (Response by Defendant Estate Opposing Defendant Losinger's Motion for Summary Judgment) at ¶ 9 (citing same)).  Further, Rolison was "affirmatively and consistently noticed in his online account for the 13 years preceding his death" about this lack of an online designated beneficiary. (Docs. 101 and 102 at ¶ 14).  The Plans' supporting documents, of which Mr. Rolison was also routinely noticed, further stated that:

> For unmarried participants, a beneficiary designation can be made at any time. If an unmarried participant dies with no named beneficiary designation on file, both Plans provide that the beneficiary will be your Estate. However, for married participants . . . the primary beneficiary is your spouse. . . . If you have a Domestic Partner or Same-Sex Spouse and want him/her to be your beneficiary, you will need to make a designation naming that person as your beneficiary.

(Doc. 85-1 Ex. A at 3 (P&G Annual Plan Reminders); *see also* Doc. 86-3 at 2)).  The Plans supporting documents further state that, upon a planholder's death, "a thorough review of

the paper v. online designations" will be conducted to determine the valid beneficiary, and that beneficiary designations and the Plans, as a whole, are subject to "certain federal regulations." (*See* Doc. 85-1 Ex. A at 3-4). Rolison further logged into his online beneficiary account "three times just prior to his death," and made no changes to his beneficiary despite the lack of a designated online beneficiary. (Docs. 101 and 102 at ¶ 18).

Three parties, the Estate, Losinger, and Murray have asserted their entitlement to Mr. Rolison's benefits. (Doc. 44, Doc. 50, and Doc. 78 at ¶¶ 16-17, 19). Losinger bases her claim on her designation as beneficiary on the paper participation application, which was never changed or updated prior to Mr. Rolison's passing. (*Id.* at ¶ 16). The Estate bases its claim on the disputed allegation that Mr. Rolison was unaware of his decades old designation, and thus believed he had no named beneficiary, which would then, if he was not married, have resulted in his benefits passing to the Estate. (Docs. 78 and Doc. 79 (Defendant Losinger's Response to Amended Answer, Counterclaims and Crossclaims of Defendant Estate) at ¶¶ 60-63). Murray, while never substantively participating in this action, bases her claim on her alleged status as the common law spouse of Mr. Rolison. (Docs. 44, 50, and 78 at ¶¶ 19-20). Notably, it is undisputed that Murray's and Rolison's relationship ended in 2015. (Docs. 78 and 79 at ¶¶ 87-91). As to Rolison's and Losinger's relationship, the Estate claims that their relationship ended in 1989 when Losinger left him and remarried, (Doc. 78 at ¶¶ 49-51, 76-80), while Losinger claims that the two maintained a lifelong friendship. (Doc. 79 at ¶¶ 49-51, 76-80).

### III. STANDARD OF REVIEW

#### A. Standard of Review for Motions for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Once such a showing has been made, the non-moving party must offer specific

facts contradicting those averred by the movant to establish a genuine issue of material

fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving

party may not oppose summary judgment simply on the basis of the pleadings, or on

conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support
> the assertion by citing to particular parts of materials in the record ... or
> showing that the materials cited do not establish the absence or presence of
> a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be

granted, "[t]he court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 501 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

Further, "[f]ailure to oppose a motion for summary judgment constitutes merely 'a waiver of the opponent's right to controvert the facts asserted by the moving party in the motion for summary judgment or the supporting material accompanying it.'" *Good-O Beverage, Inc.*, 2010 WL 11678256, at *2 (quoting *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990)). "Failure to oppose a motion for summary judgment does not 'justify the entry of summary judgment in the absence of facts in the record to support the action on the merits.'" *Id*. (quoting *Durant v. Husband*, 28 F.3d 12, 17 (3d Cir.

1994).  "'A district court must conduct a merits analysis of the moving party's motion even in
the absence of opposition.'"  *Id*. (quoting *Sprague v. Neil*, 2008 WL 140718 at *4 (M.D. Pa.
2008)).

## B. Standard of Review of Administration of ERISA Benefits

It is conceded by the parties that the Plans are to be construed by standards set forth
under ERISA.  (Doc. 44, Doc. 50, and Doc. 78 at ¶¶ 2, 6-7).  "Under ERISA, 'the fiduciary
shall administer the plan in accordance with the documents and instruments governing the
plan, making payments to a beneficiary who is designated by a participant, or by the terms
of [the] plan.'"  *Hartford Life & Acc. Ins. Co. v. Hayes*, 2014 WL 4916200, at *3 (M.D. Pa.
2014) (Hartford Life) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)).  However, as
noted by the court in *Teachers Ins. and Annuity Ass'n of America v. Bernardo*, ERISA has
no provision governing how to determine the proper plan beneficiary in the face of
competing claims and plan documents.  683 F.Supp.2d 344, 353 (E.D. Pa. 2010)
(Teachers).  As such, when faced with competing claims, district courts within the Third
Circuit have applied the applicable state court doctrine, which, in Pennsylvania, is the
doctrine of substantial compliance.  *Id*. (citing *Metropolitan Life Insurance Co. v. Kubichek*,
83 Fed.Appx. 425, 429 (3d Cir. 2003); *Hartford Life*, 2014 WL 4916200, at *5 (holding the
same); *see also Carruthers v. $21,000* (Formerly New York Life Ins. Co.), 290 Pa. Super.

54, 58 (Pa. Super. 1981) (stating that Pennsylvania Courts follow the substantial compliance doctrine when evaluating alleged changes of a beneficiary). [4]

"Under Pennsylvania law, '[w]hen the insured's intent and attempted compliance is clear, a court will exercise its equitable power to carry out the manifested intent and not permit that intent to be frustrated.'" *Teachers*, 683 F.Supp.2d at 354 (citing *Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78, 82 (3d Cir. 1985)). "If the insured has done everything possible to implement the change, Pennsylvania courts find substantial compliance." *Id.* (citing *Cipriani*, 757 F.2d at 81); *see also Hartford Life*, 2014 WL 4916200, at *5 (holding the same).

## IV. ANALYSIS

In her summary judgment motion, Losinger asserts that, as the named beneficiary, she is solely entitled to the funds because: (a) Rolison "disavowed any ongoing relationship with Murray," including as a common law spouse, which would potentially entitle her to the funds, (Docs. 84 at ¶¶ 7-8, 85 at 14-19); and (b) Rolison never attempted to change his beneficiary designation despite being "repeatedly informed" of his lack of an online beneficiary and that, absent such a designation, the paper enrollment form will be followed. (Docs. 84 at ¶ 9, 85 at 19-29). The Estate responds, while asserting its own right to the funds, that Rolison's actions after separating from Losinger and Murray as well as general

---

[4] The decedent worked and signed the Plans in Pennsylvania and all the alleged beneficiaries are domiciled here. (*See* Doc. 44 at ¶¶ 3-5, 8-10). Further, both parties cite Pennsylvania law as that which is applicable here. (*See* Docs. 84, 86). Thus, this Court will apply Pennsylvania's substantial compliance doctrine to this case. *See, e.g., Hartford Life*, 2014 WL 4916200.

equity principles make clear that the Plans' funds should be left to the Estate. (*See generally* Docs. 86, 86-3, 87). That is, the Estate suggests that (a) Rolison's commitment to a subsequent partner, *i.e.*, Mary Lou Murray, after leaving Losinger, (b) his immediate revocation or Murray's life and health insurance designations through an online interface following their separation, and (c) his failure to designate an online beneficiary or inquire into his paper beneficiary over his nearly 30 year employment with P&G all indicate that he intended his Estate, not Losinger, to receive the Plans' funds (or else he would have made the appropriate designation). (Doc. 86 at ¶ 12). As stated, Murray has not participated in this action, but the record indicates that she bases her claim on her alleged status as the common law spouse of Rolison. (*See* Doc. 44 at ¶¶ 19-20).

Under ERISA, in cases such as this, where there is a named plan beneficiary and a third party which cites extrinsic documentation to show that the named beneficiary is invalid, the court "has evinced a bright line rule . . . favoring uniform and efficient plan administration that would be undermined if an employer had to consider benefit claims form sources extrinsic to the plan documents." *Equicor v. Messinger*, 2014 WL 1491200, at *4 (W.D. Pa. 2014); *see also Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, at 135 (3d Cir. 2012) (citing *Kennedy v. Plan Adm'r for Dupont Sav. And Inv. Plan*, 555 U.S. 285, 300 (2009)) ("ERISA's well-established policy favoring uniform and efficient plan administration would be undermined if employers had to consider benefits claims from sources extrinsic to the plan documents"). Consistent with this policy rationale, under Pennsylvania's

substantial compliance doctrine, as already discussed, substantial compliance in changing a

beneficiary is only found if "every reasonable effort is made to comply with the policy

requirements." *Carruthers*, 290 Pa. Super. at 57.

Courts within this circuit have held, under Pennsylvania law, that even following a

divorce or similar life event, failure to actually change a beneficiary under a policy or take a

"positive, unequivocal" step to change the beneficiary will not constitute substantial

compliance and will result in the named beneficiary remaining entitled to the funds on a

policy. *Manufacturers Life Ins. Co. v. Dougherty*, 986 F. Supp. 928, 931, 933 (E.D. Pa.

1997); *see also Metro. Life Ins. Co. v. McCall*, 509 F. Supp. 439, 441 (W.D. Pa. 1981);

*Manhattan Life Ins. Co. of New York, N.Y. v. Evanek*, 587 F. Supp. 479, 483 (W.D. Pa.

1984), *aff'd*, 762 F.2d 319 (3d Cir. 1985).  In coming to this conclusion, two of these courts

founds persuasive that the deceased was notified that he could change his beneficiary

following his divorce but simply did not.  *See Metro Life*, 509 F.Supp. at 441; *Manhattan

Life*, 587 F.Supp. at 483.  This Court has similarly found that circumstantial evidence

allegedly showing the intent to change a beneficiary does not show substantial compliance.

*See Kerekes v. Primerica, Inc.*, 2016 WL 3220635, at *4-5 (M.D. Pa. 2016).  In *Kerekes*, this

Court rejected a current wife's claim to life insurance proceeds in favor of an ex-wife despite

a notation on his plan's forms to "delete spouse" in reference to the ex-wife.  *Id.*

Specifically, the Court found that even the affirmative act to write "delete spouse" in the

additional comments section of the plan's forms did not constitute an affirmative act to

change his beneficiary under the terms of the plan. *Id*. Quite differently, courts which have found that a party validly raised the issue of substantial compliance with regard to changing his beneficiary under a relevant policy found that the policyholder either wrote to or otherwise informed the distributors of the policy funds that he wished to change his beneficiary, but simply was unable to formally change his designation. *See, e.g.*, *Hartford Life*, 2014 WL 4916200, at 5-6; *Prudential Ins. Co. of Am. v. Bannister*, 448 F. Supp. 807, 808-09 (W.D. Pa. 1978);

In this case, the Estate has not presented any evidence that Rolison either took any "positive, unequivocal" steps to change his beneficiary or made "every reasonable effort" to do such. In fact, the Estate would have the Court grant its Motion by virtue of Rolison's inaction and failure to designate a beneficiary. This is inapposite to the holdings in cases discussing Pennsylvania's substantial compliance doctrine, which favor the named beneficiary when the policyholder does not take any affirmative action to change his beneficiary. Moreover, it is conceded by the Estate that Losinger is the named beneficiary on the paper enrollment form and that Rolison was routinely informed of his option to designate an online beneficiary or, otherwise, his previous paper designated beneficiary would receive his benefits. Indeed, the Estate further recognizes that Rolison logged into his online account multiple times prior to his death, realized he had not designated an online beneficiary, and chose not to designate such. (*See* Doc. 101 at ¶¶ 15, 18). These admissions further undercut the Estate's claims as it shows that Rolison knew that he

needed to take affirmative steps to change his previous beneficiary, and was aware that he could change his beneficiary online, but simply failed to do so.

Thus, there is no dispute of material fact that Losinger is the designated beneficiary. The Estate has not come forward with sufficient material evidence to show a genuine dispute for trial as to whether Rolison took any affirmative acts to change this designation. Losinger, therefore, as a matter of law, is entitled to summary judgment in her favor, and the consequent entitlement to the funds.  This finding is consistent with the overriding policy behind ERISA, which is uniform administration of plans without consideration of circumstantial extrinsic documents.

As to the Mary Lou Murray's claims that she may be entitled to the funds on a common law marriage theory, in order to prove such a relationship, she would have to prove that a common law marriage existed before 2005, after which Pennsylvania stopped recognizing common law marriage.  *Murray v. IBEW Local Union No. 98 Pension Plan*, 2011 WL 1883189, at *7 (E.D. Pa. May 17, 2011) (internal citation and quotations omitted) ("No common-law marriage contracted after January 1, 2005 shall be valid.").  Evidence of a common law marriage includes evidence of cohabitation, a general reputation of marriage, and, most importantly, an "'exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created,'" otherwise known as *verba in praesenti.  Int'l Painters & Allied Trades Indus. Pension Fund v. Calabro*, 312 F. Supp. 2d 697, 703 (E.D. Pa. 2004) (quoting *Staudenmayer v. Staudenmayer*, 714 A.2d

1016, 1020 (Pa. 1998)); *see also Estate of Manfredi*, 159 A.2d at 700 (holding that proof of constant cohabitation and general reputation can raise a presumption of common law marriage in some instances). This verbal exchange, in particular, must be shown by clear and convincing evidence. *Id.* (citing *Staudenmayer*, 714 A.2d at 1021).

To this end, Murray has presented no evidence of any verbal exchange with Rolison, any evidence of cohabitation, or any general reputation of being married to Rolison, let alone any evidence at all as to her relationship with Rolison. Further, it is undisputed that Murray left Rolison before his death, further ending whatever claim she may have that they had a continuous common law marriage. (*See* Docs. 78 at ¶¶ 88-92, 84 at ¶ 5, 86 at ¶ 12).

Additionally, Mary Lou Murray has not participated in this action or diligently pursued her rights, which would further warrant dismissal of her claim. *See Primerica Life Insurance Company v. Coleman*, 2017 WL 4711436, at *2 (M.D. Pa. 2017). That is, as laid out by the *Poulis* Court, certain factors warrant dismissal of an action where a party fails to prosecute her claim or respond to the court's rules or order. *See Emerson v. Thiel College*, 296 F.3d 184, 190-91 (3d. Cir. 2002) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)); *see also* Fed. R. Civ. P. 41(c) (stating that Rule 41's rules concerning dismissal for failure to prosecute apply to counterclaims, crossclaims, and third-party claims). The relevant factors for such a dismissal are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the

party or attorney was willful or in bad faith; (5) the effectiveness of sanction other than dismissal; and (6) the meritorious of the claim or defense." *Id*. at 190 (citing *Poulis,* 747 F.2d at 868).

In this case, as to the first factor, Murray, through no alleged fault of any other party or representative, has failed to respond to this court's order directing her to obtain counsel or proceed *pro se*, (Doc. 56), and, as to the third and fourth factors, has otherwise failed to communicate with the court over the course of this entire litigation short of submitting one letter , (Doc. 52). *See Emerson,* 296 F.3d at 190-91 (holding that under first, third, and fourth *Poulis* factors, because party did not have counsel, he was responsible for not responding to court and because party failed to interact with court regarding claims of the course of the suit, there was a history of dilatoriness and potential willfulness in delay). Further, as to the second factor, any additional delay in the disposition of this case may prejudice, in the form of additional costs and uncertainty, the parties who have been litigating this claim in this Court for over three years, and have been trying to ascertain the proper beneficiary of the Plans for the five years since Rolison passed away, while Mary Lou Murray has been unresponsive. *See Jackson v. U.S. Bankruptcy Court,* 350 Fed.Appx. 621, 623 (3d Cir. 2009) (recognizing that unresponsiveness and unreachability in the face of ongoing claims can be grounds for prejudice). As to the fifth factor, while nothing is known about Mary Lou Murray's potential responsiveness to a sanction, Murray's history of unresponsiveness seems to indicate that a sanction may not induce a response. *Id*. at 624

15

(recognizing futility of financial sanction in the face of previous noncompliance with court's orders). Finally, with respect to the sixth factor, as already discussed, Murray's claims also lack merit as no evidence has been presented regarding her common law marriage to Rolison, and as the evidence shows that their relationship ended before Rolison's death. *See Fowler v. Tennis*, 2011 WL 1988418, at *3 (M.D. Pa. 2011) (holding that uncontested summary judgment assertions which appear meritorious warrant finding against non-responsive party on sixth factor).

Accordingly, the *Poulis* factors, on balance, being satisfied, *see Adegbuji v. Middlesex County*, 347 Fed.Appx. 887, 881 (3d Cir. 2009) (holding that court must balance the *Poulis* factors to decide whether to dismiss claims), and there being no evidence of an alleged common marriage with Murray or her entitlement to benefits, Murray's claims will be dismissed.

Losinger has thus shown that, by clear designation, she is the beneficiary under the Plans and is therefore entitled to the funds. The Estate has failed to present sufficient evidence to show a genuine dispute of fact for trial as to whether Rolison changed this designation or substantially complied with the policy in attempting to change this designation. Murray has similarly failed to create a genuine dispute for trial regarding the existence of a common law marriage which could allegedly overcome the designation, and her claim can nonetheless be dismissed, under *Poulis*, for failure to comply with the court's

rules.  The evidence of record shows no dispute of material fact exists and summary judgment shall be entered as a matter of law in favor of Losinger.

## V. CONCLUSION

Accordingly, upon consideration of all the evidence on the record and pursuant to the foregoing discussion, summary judgment in favor of Losinger as to P&G's Interpleader action and the Estate's crossclaim is appropriate at this time.  As this Court has thus determined that Losinger is entitled to the Plans' funds, the Estate's Motion is denied and its crossclaim against Murray is dismissed as moot.  A separate Order follows.

Robert D. Mariani
United States District Court Judge