**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE PROCTER & GAMBLE U.S. BUSINESS** | : | |
| **SERVICES COMPANY, as Plan Administrator** | : | **CIVIL ACTION NO. 3:17-CV-762** |
| **and on Behalf of THE PROCTER & GAMBLE** | : | **(JUDGE MARIANI)** |
| **PROFIT SHARING TRUST AND** | : | |
| **EMPLOYEE STOCK OWNERSHIP PLAN** | : | |
| **and THE PROCTER & GAMBLE SAVINGS** | : | |
| **PLAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ESTATE OF JEFFREY ROLISON,** | : | |
| **Deceased, MARGARET M. LOSINGER,** | : | |
| **and MARY LOU MURRAY,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM OPINION</u>

### I. Introduction

Two motions are pending before the Court in the above-captioned matter: Defendant

Estate of Jeffrey Rolison's Motion to Certify for Interlocutory Appeal (Doc. 112) filed on

October 26, 2020, and Defendant Margaret M. Losinger's Motion to Require Bond for

Appeal (Doc. 113) filed on November 6, 2020.  These motions were filed after the Court

denied the Motion for Reconsideration of the Estate of Jeffrey Rolison (Doc. 105) on

September 24, 2020, (Doc. 111) which sought reconsideration of the Court's July 21, 2020,

decision (Docs. 103, 104) granting Defendant, Margaret M. Losinger's Motion for Summary

Judgment as to Proctor & Gamble's interpleader action and the Estate's crossclaim (Docs. 26, 84).

With the Memorandum Opinion of July 21, 2020, (Doc. 103), the Court determined that Defendant Losinger was decedent Jeffrey Rolison's proper beneficiary of the funds contained in the Procter & Gamble Profit Sharing Trust and Employee Stock Ownership Plan and The Procter & Gamble Savings Plan ("the Plans"). In denying Defendant Estate's motion for reconsideration, the Court rejected Defendant Estate's assertion that reconsideration was warranted based on alleged errors of law. (Doc. 111 at 2-5.)

Defendant Estate of Jeffrey Rolison's Motion to Certify for Interlocutory Appeal again points to error with the supporting brief specifically identifying the Court's application of the "substantial compliance doctrine," a Pennsylvania state court doctrine, to determine the proper beneficiary. (Doc. 112 at 5-6; Doc. 114 at 7.)

## II. STANDARD FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

In most cases, only "final decisions" of district courts are appealable to the courts of appeals. *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). An interlocutory order by a district court is not such a "final decision." *See Tara M. by Kanter v. City of Phila.*, 145 F.3d 625, 627 (3d Cir. 1998).

However, under 28 U.S.C. § 1292(b), interlocutory orders can be appealable if certified by the district court and subsequently accepted by the court of appeals for

consideration.  28 U.S.C. § 1292(b).  "Section 1292(b) was the result of dissatisfaction with the prolongation of litigation and with harm to litigants uncorrectable on appeal from a final judgment which sometimes resulted from strict application of the federal final judgment rule." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974).  The purpose of Section 1292(b) is to avoid "a wasted protracted trial if it could early be determined that there might be no liability," such as "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action." *Id.* at 754 (citing legislative history of Section 1292(b)).  "Congress intended that [S]ection 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

Section 1292(b) states:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that **such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation**, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis added).  Thus, "[f]or a district court to properly grant a

certificate of appealability under § 1292(b), its order must: (1) involve a 'controlling question

of law,' (2) offer 'substantial grounds for difference of opinion' as to its correctness, and (3) if

immediately appealed, 'materially advance the ultimate termination of the litigation.' " *G.L. v.*

*Ligonier Valley Sch. Dist. Auth.*, Civ. A. No. 2:13-CV-00034, 2013 WL 6858963, at *6 (W.D.

Pa. Dec. 30, 2013) (quoting *Katz*, 496 F.2d at 754), *aff'd and remanded*, 802 F.3d 601 (3d

Cir. 2015).

Courts in the Third Circuit have further defined the three elements of the Section

1292(b) test.  First, "[a] controlling question of law must encompass at the very least every

order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755.

"'Controlling' means serious to the conduct of the litigation in a practical or legal

sense." *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014)

(citations omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

Next, "[a] 'substantial ground for difference of opinion' must arise out of doubt as to

the correct legal standard, such as conflicting precedent, the absence of controlling law, or

complex statutory interpretation." *Karlo v. Pittsburgh Glass Works, LLC*, Civ. A. No. 2:10-

CV-1283, 2014 WL 12539666, at *1 (W.D. Pa. July 3, 2014) (citing *Glover v. Udren*, Civ. A.

No. 08-990, 2013 WL 3072377, at *3 (W.D. Pa. June 18, 2013)).  Questions of first

impression can present substantial grounds for difference of opinion. *Nationwide Life Ins.*

*Co. v. Commonw. Land Title Ins. Co.*, Civ. A. No. 05-281, 2011 WL 1044864, at *3 (E.D. Pa.

Mar. 23, 2011) ("The sheer absence of any persuasive, let alone controlling, law on this issue is sufficient on its own to provide substantial grounds for difference of opinion."); *see also Wyndham*, 10 F. Supp. 3d at 634-35 (certifying for appeal an issue of first impression regarding the application of the FTC Act to a data security breach and noting that the "novelty" of the liability issues means that "reasonable jurists may differ over the court's resolution" of the issues).  However, "[a] party's strong disagreement with the Court's ruling does not constitute a 'substantial ground for difference of opinion[,] ... [n]or does a dispute over the application of settled law to a particular set of facts." *Karlo*, 2014 WL 12539666, at *1 (citations omitted).

"Finally, a § 1292(b) certification 'materially advances the ultimate termination of the litigation' where the interlocutory appeal eliminates: '(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome.'" *Karlo*, 2014 WL 12539666, at *1 (quoting *Litgo N.J., Inc. v. Martin*, Civ. A. No. 06-2891 (AET), 2011 WL 1134676, at *3 (D.N.J. Mar. 25, 2011)).

In addition to the three elements of the Section 1292(b) test, another factor for district courts meriting consideration is whether the issues in the action are of "nationwide significance." *Wyndham*, 10 F. Supp. 3d at 636 (considering, in a consumer protection enforcement action brought by the FTC, "the nationwide significance of the issues in this action—which indisputably affect customers and businesses in a climate where we collectively struggle to maintain privacy while enjoying the benefits of the digital

5

age"); *Nationwide*, 2011 WL 1044864, at *4 ("Moreover, the Third Circuit's determination of this issue could potentially have a widespread impact on the underwriting and application of land title insurance policies in the United States.").

### III. ANALYSIS

#### A. Finality of July 21, 2020, Order

First, the parties dispute whether the Court's July 21, 2020, Order (Doc. 104) was a final order.  Defendant Losinger asserts that the Court's order was final and the time for appeal has run.  (Doc. 121 at 7; Doc. 123 at 2.)  Defendant Estate maintains that, by definition, the order was not final in that there are still pending and related counterclaims and crossclaims of record.  (Doc. 122 at 3-4.)

Under 28 U.S.C. § 1291, "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."  28 U.S.C. § 1291.  As stated in *Elliott v. Archdiocese of New York*, 682 F.3d 213, 219–20 (3d Cir. 2012), "[g]enerally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a 'final' order for purposes of 28 U.S.C. § 1291."  *Id.* at 219 (citing *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 431–32 (1956); *Carter v. City of Phila.,* 181 F.3d 339, 343 (3d Cir.1999)).   *Elliott* also explained the exception carved out under Rule 54(b) of the Federal Rules of Civil Procedure where " a district court may convert an order adjudicating less than an entire action to the

6

end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction

under 28 U.S.C. § 1291." *Id.*

Rule 54(b) addresses "Judgment on Multiple Claims or Involving Multiple Parties"

and provides that

> [w]hen an action presents more than one claim for relief—whether as a claim,
> counterclaim, crossclaim, or third-party claim—or when multiple parties are
> involved, the court may direct entry of a final judgment as to one or more, but
> fewer than all, claims or parties only if the court expressly determines that there
> is no just reason for delay. Otherwise, any order or other decision, however
> designated, that adjudicates fewer than all the claims or the rights and liabilities
> of fewer than all the parties does not end the action as to any of the claims or
> parties and may be revised at any time before the entry of a
> judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). *Elliott* added that "[c]ertification of a judgment as final under Rule

54(b) is the exception, not the rule, to the usual course of proceedings in a district court."

682 F.3d at 220.

The Court's July 21, 2020, Memorandum Opinion and Order (Docs. 103, 104) did not

address Defendant Estate's counterclaim against Plaintiff (*see* Doc. 78 at 9-10).  That

counterclaim remains pending before the Court.  Although Defendant Estate maintains that

crossclaims are also pending, the Court concludes otherwise: the Court stated in the July

21, 2020, Memorandum Opinion that summary judgment in favor of Defendant Losinger on

Defendant Estate's crossclaim "is appropriate at this time" and Defendant Estate's

crossclaim against Defendant Murray "is dismissed as moot."[1]  (Doc. 103 at 17.)

Cossclaims against Defendants Losinger and Murray are the only crossclaims set out in

Defendant Estate's Amended Answer, Counterclaims and Crossclaims of Defendant Estate

of Jeffrey Rolison.  (*See* Doc. 78 at 10-13.)

Because Defendant Estate's counterclaim remained pending when the Court issued

the July 21, 2020, Order (Doc. 104), the Order was not "final" for purposes of appeal under

28 U.S.C. § 1291.  Further, the Court made no express determination that any aspect of the

July 21, 2020, Order (Doc. 104) was a final judgment.  Therefore, the Order was not

appealable as an exception to 28 U.S.C. § 1291 pursuant to Federal Rule of Civil Procedure

54 (b).[2]

## B.  Timeliness of Defendant Estate's Motion

As set out above, 28 U.S.C. § 1292(b) contains a provision that application must be

made to the Court of Appeals within ten days of the district judge's order certifying a matter

for interlocutory appeal.  Defendant Losinger interprets this provision to mean that

---

[1] By Order of July 21, 2020, the Court granted Defendant Losinger's motions for summary judgment as to Plaintiff P&G's interpleader action and Defendant Estate's crossclaim against her.  (Doc. 104 ¶ 1.)  The Court did not indicate in the Order that the Estate's crossclaim against Defendant Murray was dismissed as moot.  (*See* Doc. 104.)  Therefore, the Court will file a corrective document to reflect the dismissal of Defendant Estate's crossclaim against Defendant Murray as moot.

[2] With this conclusion, the Court makes no determination on the propriety of entry of final judgment regarding the disposition of any adjudicated claim pursuant to Rule 54(b) as no litigant has placed the issue before the Court.  Thus, further discussion of the standard applicable to consideration of a Rule 54(b) motion, *see Elliott*, 682 F.3d at 219-21; *see also Wallace v. Powell*, Civ. A. Nos. 3:009-CV-286, 3:10-CV-1405, at *1-2 (M.D. Pa. Feb. 28, 2012), is not warranted at this time.

Defendant Estate's pending motion is not timely: the motion requesting interlocutory appeal had to be filed within ten days of the entry of the Court's Order denying the motion for reconsideration but Defendant Estate did not file the pending motion until thirty-one days after entry of the September 24, 2020, Order.  (Doc. 121 at 14-15; Doc. 123 at 10.) Defendant estate disputes this interpretation, asserting that the ten-day period in § 1292(b) refers only to "application for leave to appeal to the Third Circuit following this Court's grant of the Estate's Motion."  (Doc. 122 at 4.)

Courts applying the ten-day filing application requirement have found it to begin to run on the date the district court grants a party's motion for certification of interlocutory appeal.  *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 738 (1976); *In re Estate of Hodge*, 243 F. Supp. 2d 354, 356, 392-93 (D.V.I. 2003) (citing 16a Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3951 (1999)); *Koger Inc. v. Klco*, Civ. A. No. 08-4175, 2010 WL 4553522, at *2 (D.N.J. Nov. 3, 2010) ("neither section 1292(b) nor interpretive caselaw set any time constraints on when a party must file a motion for permission to seek prompt review of a non-final order [but] the entire procedure for departing from the normal course of appealing only final orders suggests a need for timeliness . . . [and] [d]elay between entry of the order for which certification is sought and the filing of a motion for this relief has been considered as a factor militating against granting certification.").

Based on the foregoing, the Court has no basis to conclude that Defendant Estate of Jeffrey Rolison's Motion to Certify for Interlocutory Appeal (Doc. 112) was not timely filed. With this determination, the Court will turn to the merits of Defendant Estate's claimed entitlement to interlocutory appeal.

## C. Certification of Interlocutory Appeal

Defendant maintains that this case satisfies the requisite standard for certification because the appeal could resolve controlling questions of law and the questions concerned present a substantial ground for difference of opinion.  (Doc. 114 at 11-15.)  Assuming *arguendo* that the appeal could resolve controlling questions of law, the Court concludes that Defendant Estate has not shown that there is a "substantial ground for difference of opinion" on the controlling law.  28 U.S.C. § 1292(b).

Here, the controlling law at issue is the substantial compliance doctrine which the Court explained and applied in the July 21, 2020, Memorandum Opinion:

> It is conceded by the parties that the Plans are to be construed by standards set forth under ERISA. (Doc. 44, Doc. 50, and Doc. 78 at ¶¶ 2, 6-7). "Under ERISA, 'the fiduciary shall administer the plan in accordance with the documents and instruments governing the plan, making payments to a beneficiary who is designated by a participant, or by the terms of [the] plan.'" *Hartford Life & Acc. Ins. Co. v. Hayes*, 2014 WL 4916200, at *3 (M.D. Pa. 2014) (Hartford Life) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). However, as noted by the court in *Teachers Ins. and Annuity Ass'n of America v. Bernardo*, ERISA has no provision governing how to determine the proper plan beneficiary in the face of competing claims and plan documents. 683 F.Supp.2d 344, 353 (E.D. Pa. 2010) (Teachers). As such, when faced with competing claims, district courts within the Third Circuit have applied the applicable state court doctrine which, in Pennsylvania, is the doctrine of substantial compliance. *Id.* (citing *Metropolitan Life Insurance Co. v. Kubichek*,

10

83 Fed.Appx. 425, 429 (3d Cir. 2003)); *Hartford Life*, 2014 WL 4916200, at \*5 (holding the same); *see also Carruthers v. $21,000* (Formerly New York Life Ins. Co.), 290 Pa. Super. 54, 58 (Pa. Super. 1981) (stating that Pennsylvania Courts follow the substantial compliance doctrine when evaluating alleged changes of a beneficiary).

"Under Pennsylvania law, '[w]hen the insured's intent and attempted compliance is clear, a court will exercise its equitable power to carry out the manifested intent and not permit that intent to be frustrated.'" *Teachers*, 683 F.Supp.2d at 354 (citing *Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78, 82 (3d Cir. 1985)). "If the insured has done everything possible to implement the change, Pennsylvania courts find substantial compliance." *Id.* (citing *Cipriani*, 757 F.2d at 81); *see also Hartford Life*, 2014 WL 4916200, at \*5 (holding the same).

. . . .

Courts within this circuit have held, under Pennsylvania law, that even following a divorce or similar life event, failure to actually change a beneficiary under a policy or take a "positive, unequivocal" step to change the beneficiary will not constitute substantial compliance and will result in the named beneficiary remaining entitled to the funds on a policy. *Manufacturers Life Ins. Co. v. Dougherty*, 986 F. Supp. 928, 931, 933 (E.D. Pa. 1997); *see also Metro. Life Ins. Co. v. McCall*, 509 F. Supp. 439, 441 (W.D. Pa. 1981); *Manhattan Life Ins. Co. of New York, N.Y. v. Evanek*, 587 F. Supp. 479, 483 (W.D. Pa. 1984), *aff'd*, 762 F.2d 319 (3d Cir. 1985). In coming to this conclusion, two of these courts found persuasive that the deceased was notified that he could change his beneficiary following his divorce but simply did not. *See Metro Life*, 509 F.Supp. at 441; *Manhattan Life*, 587 F.Supp. at 483. This Court has similarly found that circumstantial evidence allegedly showing the intent to change a beneficiary does not show substantial compliance. *See Kerekes v. Primerica, Inc.*, 2016 WL 3220635, at \*4-5 (M.D. Pa. 2016). In *Kerekes*, this Court rejected a current wife's claim to life insurance proceeds in favor of an ex-wife despite a notation on his plan's forms to "delete spouse" in reference to the ex-wife. *Id.* Specifically, the Court found that even the affirmative act to write "delete spouse" in the additional comments section of the plan's forms did not constitute an affirmative act to change his beneficiary under the terms of the plan. *Id.* Quite differently, courts which have found that a party validly raised the issue of substantial compliance with regard to changing his beneficiary under a relevant policy found that the policyholder either wrote to or otherwise

informed the distributors of the policy funds that he wished to change his beneficiary, but simply was unable to formally change his designation. *See, e.g.*, *Hartford Life*, 2014 WL 4916200, at 5-6; *Prudential Ins. Co. of Am. v. Bannister*, 448 F. Supp. 807, 808-09 (W.D. Pa. 1978).

In this case, the Estate has not presented any evidence that Rolison either took any "positive, unequivocal" steps to change his beneficiary or made "every reasonable effort" to do such. In fact, the Estate would have the Court grant its Motion by virtue of Rolison's inaction and failure to designate a beneficiary. This is inapposite to the holdings in cases discussing Pennsylvania's substantial compliance doctrine, which favor the named beneficiary when the policyholder does not take any affirmative action to change his beneficiary. Moreover, it is conceded by the Estate that Losinger is the named beneficiary on the paper enrollment form and that Rolison was routinely informed of his option to designate an online beneficiary or, otherwise, his previous paper designated beneficiary would receive his benefits. Indeed, the Estate further recognizes that Rolison logged into his online account multiple times prior to his death, realized he had not designated an online beneficiary, and chose not to designate such. (*See* Doc. 101 at ¶¶ 15, 18). These admissions further undercut the Estate's claims as it shows that Rolison knew that he needed to take affirmative steps to change his previous beneficiary, and was aware that he could change his beneficiary online, but simply failed to do so.

(Doc. 103 at 8-11.)

Although the Court reviewed and further explained its earlier application of the substantial compliance doctrine in its Order denying the Motion for Reconsideration of the Estate of Jeffrey Rolison (Doc. 105 at 2-5 (citing Doc. 103 at 8-12)), Defendant Estate continues to assert that the Court's application of the doctrine was inappropriate because the Court required that the decedent had taken a "positive, unequivocal" step to change his beneficiary. (*See* Doc. 114 at 7.)

12

Defendant maintains that the Court's determination is at odds with the District Court decision in *Teachers Ins. & Annuity Ass'n of Am. v. Bernardo*, 683 F. Supp. 2d 344, 352-53 (E.D. Pa. 2010), which found that interpleader by an ERISA fiduciary "waives [its]right to insist on strict compliance" with its plan rules and, correspondingly end [sic] the right of a plan-designated beneficiary to claim a benefit under them." (Doc. 114 at 13.) Defendant also posits that the Court's determination runs afoul of the Third Circuit's decision in *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012), which "provides that once an ERISA employer's interest is no longer implicated in a dispute through account distribution, there is no requirement to apply the plan documents rule; the same rule should apply with interpleader." (Doc. 114 at 13.)

Here, the Court neither insisted on strict compliance with plan rules nor found that application of the plan documents rule was required. [3] *See supra* pp. 10-12. Defendant Estate does not show how the cited cases support a conclusion that there is a substantial

---

[3] In the Order denying the Motion for Reconsideration of the Estate of Jeffrey Rolison (Doc. 105), the Court elaborated on its earlier analysis and considered Defendant Estate's assertion that "the duty of the Court is to give effect to the manifest intention of the ERISA employee" and its evidence had made the necessary showing such that it was entitled to judgment in its favor. (Doc. 111 at 3.) The Court agreed that its equitable powers and application of the substantial compliance doctrine would carry out the manifest intent of the ERISA employee *if* the employee's "attempted compliance is clear." (*Id.* (quoting *Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78, 82 (3d Cir. 1985) (emphasis added)).) However, the Court disagreed that the Estate's evidence "showed any *manifest* intent on the part of the deceased or any attempt to comply with the plan's change-of-beneficiary requirements." (*Id.*) The Court explained that because the Estate cited no evidence that Jeffrey Rolison made any attempt to comply with the policy requirements regarding changing the beneficiary, under applicable law, the Estate presented no basis for the Court "to exercise its equitable power to carry out the manifested intent" of the deceased." (*Id.* at 3-4 (quoting *Cipriani*, 757 F.2d at 82; citing *Teachers Ins. and Annuity Ass'n of America v. Bernardo*, 683 F. Supp. 2d 344, 354 (E.D. Pa. 2010)).)

ground for difference of opinion on the application of the substantial compliance doctrine. *In re Kensinger* does not discuss the doctrine at all. *Bernardo* confirms that evidence that the decedent took some positive or affirmative action to change the beneficiary is needed for a court to find that someone other than the named beneficiary should prevail under the substantial compliance doctrine. 683 F. Supp. 2d at 352-53. Thus, these cases present no basis to certify an interlocutory appeal.

Defendant also argues that interlocutory appeal should be certified because this case raises an issue of first impression given the unique facts of the case. (Doc. 114 at 13.) As set out above, the unique facts of a case do not support certification of an interlocutory appeal—the basis for finding "substantial ground for difference of opinion" arises "out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation." *Karlo,* 2014 WL 12539666, at *1. This case presents a situation where the controlling legal standard, the substantial compliance doctrine, is widely agreed upon. *See*, *e.g.*, *Bernardo*, 683 F. Supp. 2d at 352-355. Defendant identifies no conflicting precedent, absence of controlling law, or complex statutory interpretation. Rather, Defendant Estate asserts a "strong disagreement with the Court's ruling . . . [and] a dispute over the application of settled law to a particular set of facts," neither of which constitute a substantial ground for difference of opinion. *Karlo*, 2014 WL 12539666, at *1 (citing *Couch v. Telescope, Inc.*, 6111 F.3d 629, 633 (9th Cir. 2010)). Thus, Defendant has presented no basis for the Court to conclude that this case presents a

substantial ground for difference of opinion on the controlling law which would warrant

certification of an interlocutory appeal.

### IV. CONCLUSION

For the reasons discussed above, Defendant Estate of Jeffrey Rolison's Motion to

Certify for Interlocutory Appeal (Doc. 112) will be denied.  Based on the denial of Defendant

Estate's motion, Defendant Margaret M. Losinger's Motion to Require Bond for Appeal

(Doc. 113) will be deemed moot.  A separate Order is filed simultaneously with this

Memorandum Opinion.

Robert D. Mariani
United States District Judge