UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY, As Plan Administrator And On Behalf Of THE PROCTER & GABLE PROFIT SHARING TRUST AND EMPLOYEE STOCK OWNERSHIP PLAN and THE PROCTER & GAMBLE SAVINGS PLAN,<br>　　　　Plaintiff,<br><br>vs.<br><br>ESTATE OF JEFFREY ROLINSON, Deceased, and<br>MARGARET M. LOSINGER,<br>　　　　Defendants. | Case No. 3:17-cv-00762<br>**Assigned to Robert D. Mariani** |

## **DEFENDANT, MARGARET M. LOSINGER'S, MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT TO CROSSCLAIM OF THE ESTATE OF JEFFEERY ROLISON**

　　This action was brought under the Employee Retirement Income Security Act (ERISA) 29 U. S. C. ss 1001 et. seq. by Procter & Gamble as plan administrator on behalf of The Procter & Gamble Profit-Sharing Trust and Employee Stock Ownership Plan ESOP and the Procter & Gamble savings plan in order to determine who, of the defendants, is entitled to the Plans' funds following the death of Jeffrey Rolison. (See Doc 44).

　　The initial complaint was filed in April 2017 and amended in 2018 with the Defendant the Estate of Jeffrey Rolison asserting cross claims against the defendant Margaret Losinger.

This Honorable Court previously decided motions for summary judgment, on July 21, 2020 at ECF Document 103, pg. 3, and made various findings of "material fact", as listed below:

a. The named beneficiary as appointed by Mr. Rolison was Margaret Sjostedt, now known as Margaret Losinger. (Document 44 at paragraph 16, Document 101, Document 102, para. 3, and Also Doc 26-2 Ex. B (Plans' Participation Form).

b. Mr. Rolison was "affirmatively and consistently notified for 13 years" that his online account lacked the designation of a beneficiary, (Documents 101 and 102, paragraph 14), and that if a primary beneficiary was not designated online . . ., Beneficiaries designated using paper forms are still valid even though they are not reflected in the electronic system, . . . (Document 86–3 at 3, (citing document 86–2 at Admission Nos. 15, 24–25 P&G's Responses to Request for Admissions from Defendant Estate) and also, Document 84 (Losinger Motion for Summary Judgment) and 87, para. 9, (Response by the Estate opposing Losinger Motion for Summary Judgment).

c. Rolison was routinely informed of his option to designate an online beneficiary or, otherwise, his previous paper designated beneficiary would receive his benefits. And, that Rolison logged into his online account multiple times prior to his death, and realized he had not designated an online beneficiary, and chose not to designate such. (See Document 103 page 12, and also Document 101 para. 15, 18).

d. Rolison knew that he needed to take affirmative steps to change his previous beneficiary, and was aware that he could change the beneficiary online, but simply failed to do so. No evidence exists that Rolison either took any positive unequivocal steps to change his beneficiary or made reasonable efforts to do so. (Document 103, pg. 12, 13).

**STANDARD FOR SUMMARY JUDGMENT:**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FRCP 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp, v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  *Lujan v. Nat'l Wildlife* Fed'n, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56©(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t}he Court need to consider only the cited materials, but it may consider other materials in the record."  FRCP 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMA of N.Am., Inc*. 974 F.2d 1358, 1363 (3d Cir. 1992), *cert denied* 501 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine dispute as to those facts." *Scott v. Harris*, 550 U.S.

372, 380, 127 S.Ct. 1769, 1776 167 L.Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> Its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt a version of the facts for purposes of ruling on a motion for summary judgment. *Id.* (internal citations omitted).

The Estate currently claims that Losinger, as the Sole named beneficiary, is subject to the remedy of imposition of a constructive trust in favor of the Estate, and its two heirs, the brothers of the decedent, Jeff Rolison.  Losinger moves this Honorable Court to Grant a summary judgment in favor of Losinger and dismiss the Estate's cross claim seeking to impose a constructive trust.

**ISSUE:**

**Are the funds from the P&G 401K and PST plan subject to a constructive Trust in favor of the Estate.**

**Suggested Answer: No.**

**LAW and ARGUMENT:**

The party seeking to impose a **_constructive trust_**, . . ., bears a heavy **_burden of proof_** and must establish the elements of a **_constructive trust_** by clear, direct, precise and convincing evidence. *In re Shareholders Funding, Inc., 188 B.R. 150, 156 (Bankr. E.D. Pa. 1995)*; *In re I.D. Craig Service Corp., 125 B.R. 453, 456 (Bankr. W.D. Pa. 1991)*; *Roberson v. Davis, 397 Pa. Super. 292, 580 A.2d 39 (1990)*.  Under

Pennsylvania law, a ***constructive trust*** is an equitable remedy that is imposed when a person who holds legal title to property is under an equitable duty to convey it to another person to avoid unjust enrichment due to fraud, duress, undue influence, mistake or abuse of a confidential relationship. *Shareholders Funding, 188 B.R. at 156*; *Yohe v. Yohe, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976)*; *Roberson, 580 A.2d at 40-41 (1990)*. A ***constructive trust*** is actually a form of restitution and an equitable remedy imposed to avoid unjust enrichment. *Roberson v. Davis, 397 Pa. Super. 292, 580 A.2d 39, 41 (Pa. Super. Ct. 1990)*; *Kamand Constr., Inc. v. Prop. Mgmt. (In re Kamand Constr., Inc.), 298 B.R. 251, 254-255 (Bankr. M.D. Pa. 2003)*; *ESI Enters. v. Joseph B. Dahlkemper Co. (In re Joseph B. Dahlkemper Co.), 165 B.R. 149, 154 (Bankr. W.D. Pa. 1994)* **,** (citing *Stauffer v. Stauffer, 465 Pa. 558, 351 A.2d 236, 241 (1996))*.

Traditionally, ***constructive trusts*** have been imposed where a party acquires legal title to property by *violating some express or implied duty owed to another*. *(emphasis added)*. Such a ***trust*** may also be imposed where property is obtained through bad faith, fraud, or lack of good conscience. *In re Kulzer Roofing, Inc., 139 B.R. at 141*. We must not be quick to impose a ***constructive trust*** unless the circumstances of the matter before us evoke the court's equity and demand a remedy, e.g. a case of a *defendant who has profited by its wrongdoing or breach of a confidential relationship (emphasis added),* which gives rise to the "equitable duty" to transfer the property in question to the party which equity seeks to protect. *Eisenberg v. Rickard (In re Rickard), 2006 Bankr. LEXIS 3737*. (citing, *Shareholders*

*Funding, 188 B.R. at 158* (citing *Skilled Nursing Professional Servs. v. Sacred Heart Hosp. (In re Sacred Heart Hosp.), 175 B.R. 543, 556 (Bankr. E.D. Pa. 1994)*; *see also In re Globe Store Acquisition Co., 178 B.R. 400, 404 (Bankr. M.D. Pa. 1995)*. "While we are mindful that an entity which receives something for no consideration, and not as a gift, is unjustly enriched, we are compelled to observe that if that were the only standard, then every creditor[1] . . . could claim to be the beneficiary of a **constructive trust**…"). *Eisenberg v. Rickard (In re Rickard), 2006 Bankr. LEXIS 3737*.

The ***elements*** necessary to establish an unjust-enrichment claim are "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." **Mitchell v. Moore**, *1999 PA Super 77, 729 A.2d 1200, 1203 (Pa. Super. 1999)*. An equitable duty to convey the property arises only in the presence of fraud, duress, undue influence, mistake or . . . , abuse of a confidential relationship. *Yohe, 353 A.2d at 421*; see also *In re Kamand Construction, 298 B.R. at 255*; *In re Shareholders Funding, Inc., 188 B.R. 150, 156 (Bankr. E.D. Pa. 1995)*; *In re Kulzer Roofing, Inc., 139 B.R. 132 (Bankr. W.D. Pa. 1992)* (and cases cited therein).

---

[1] The Estate incorrectly alleges an Equitable interest in the funds, which would create a quasi-creditor status. However, as will be set forth in more detail throughout this brief, the Estate does not rise to the level of creditor or Equitable ownership, as the elements of both Constructive Trust and Unjust Enrichment are not met or proven by any fact or admissible evidence.

As with ***proof*** of the existence of a ***constructive trust***, the ***burden of proof*** on the issue of whether a ***constructive trust*** should be imposed is a matter of state, not federal law. <u>Krol v. Wilcek (In re H. King & Assocs.), 295 B.R. 246 (Bankr. N.D. Ill. 2003)</u>; Russell, Bankruptcy Evidence Manual, 2007 Ed., § 301.66, p. 936-937. A heavy ***burden*** lies with one who seeks to have a ***constructive trust*** imposed. The evidence must be clear, direct, precise and convincing. <u>Roberson v. Davis, 397 Pa. Super. 292, 580 A.2d 39, 41 (Pa. Super. Ct. 1990)</u>; <u>Masgai v. Masgai, 460 Pa. 453, 333 A.2d 861, 865 (Pa. 1975)</u>; <u>In re Kamand Construction, Inc., 298 B.R. 251, 256 (Bankr. M.D. Pa. 2003)</u>; <u>Skilled Nursing Professional Servs. v. Sacred Heart Hosp. (In re Sacred Heart Hosp.), 175 B.R. 543, 555 (Bankr. E.D. Pa. 1994)</u>; <u>In re I.D. Craig Service Corporation, 125 B.R. 453, 456 (Bankr. W.D. Pa. 1991)</u>.

The estate cannot produce any evidence, factual support or legal basis to justify the imposition of the equitable remedy of constructive trust. This Court determined that Jeff Rolison knew the steps he needed[2] to take to change his beneficiary, was warned his designated paper beneficiary would receive his benefits and he took no positive unequivocal steps or made reasonable efforts to change his designated beneficiary. Due to the Court determining Losinger was the legal owner of the funds, it cannot be said Losinger obtained the right to the funds by violating some express or implied duty to another party, bad faith, fraud, lack of good conscience, wrongdoing, or breach of a confidential relationship. Further, there was

---

[2] The estate representatives admit that Jeff Rolison received the P&G documents, the documents spell out clearly what he needed to do to determine and designate a beneficiary, and there is no mistake as to the content and message in the P&G Documents.

no evidence to support a mistake by any party or entity. In fact, the Estate abandoned their original claim that P&G mistakenly lost documents or didn't record the beneficiary change.

The Estate's representatives are unable to establish any facts or present any evidence to contradict the findings of this court or establish that the remedy of constructive trust is appropriate. To the contrary, on questioning by his own counsel, the Estate's representative, Brian Rolison testified that, in the Mid 90's Jeffery Rolison knew Losinger was his beneficiary[3]. Co-Administrator Brian Rolison testified[4] that he had a direct conversation with Jeffrey Rolison in the mid-90's regarding Losinger's status as his then designated beneficiary. Brian Rolison claims that he encouraged Jeff Rolison to follow up on the paperwork side with removing Losinger as his designated beneficiary. (See SOUMF #1). Yet, in spite of dozens of warnings regarding his beneficiary designations, statuses and the need to review those designations, Jeff Rolison took no affirmative action. Rick Rolison additionally testified that, although Jeff Rolison and Rick never discussed the P&G documents, or the accounts in this case (SOUMF 41, 25), Rick assumed Jeff didn't necessarily want the funds to go to his estate because he was planning on living on them (SOUMF 33).

---

[3] No further inquiry is necessary, as a constructive trust cannot be a remedy where The estate representative admits Rolison knew Losinger was his Beneficiary with this Court finding that Losinger is the rightfully named beneficiary, and that Rolison knew and was informed how to change beneficiaries yet took no affirmative action to do so.

[4] Most if not all of the Administrators' testimony is based on speculation and assumption. It is further likely disqualified under the Dead Man's Statute in that The Deponents stand to profit from statements they attribute to the decedent. However, the statement that Jeff Rolison knew of Losinger's status, is admissible as a statement against interest made by the estate representative.

Neither estate representative possess evidence that Losinger committed fraud, exercised undue influence, violated a duty to anyone, or profited by any sort of wrong doing. (See SOUMF #'s 13, 14, 36). The Estate representatives can't produce evidence of any sort; i.e. will, letter, notes, attempts to change online, or otherwise, to prove the Beneficiary designation was not a gift. (SOUMF #'s 16, 17, 20, 25, 42, 46).  In fact, Brian Rolison knew so little about Jeff Rolison's affairs that he had no idea who was a beneficiary on a CIGNA Life insurance policy or where Jeff Rolison had safe deposit boxes. (SOUMF #'s 16,147,18,19). Finally, neither has any evidence the designation of Losinger was not a gift. (SOUMF 20).

The estate representatives contradict each other and themself by citing various other alleged circumstances that contradict their claims, or if true would require others beside themselves to be beneficiaries. For instance, they both testified that Jeff Rolison was to name others, yet Jeff Rolison failed to follow through on naming either their children, their mother or Mary Lou Murray as beneficiaries. (SOUMF #'s 20, 22, 23, 30, 31, 37, 41, 45).  Likewise, Rick Rolison claims he knows Jeff removed Losinger in favor of either his mother, Rick Rolison's daughter or Mary Lou Murray, yet, he testified that he never had a conversation with Jeff regarding beneficiary designation. (SOUMF #'s 20, 22, 23, 30,31, 37, 41, 45).

Brain Rolison goes so far as to say that documents exist showing that Jeff Rolison listed beneficiaries (SOUMF #4) other than Losinger, that documents exist showing Jeff Rolison had not chosen a beneficiary, (SOUMF #5), and  that their mother and Murray were beneficiaries (SOUMF # 11). However, the estate hasn't

produced a scintilla of evidence to support this claim. Brian Rolison claims there is a big misunderstanding, (SOUMF 14), despite his own statements that Jeff Rolison knew in the mid 90's that Losinger was his paper beneficiary (SOUMF 1), and despite that after seeing the P&G documents, Brian Rolison has no question as to what Jeff Rolison would have had to do to determine or change his beneficiary (SOUMF 14).

Both representatives agree that there can be no mistake in the content or reading the P&G warnings, notices and directives regarding beneficiary selection and designation. (SOUMF #'s 38, 48). They both also agree that Jeff Rolison had received the P&G notices. (SOUMF 6, 7, 8, 26, 27). Nonetheless, and contrary to their actual claims pending before this court, they both still assert that the estate claim is that P&G lost paperwork related to beneficiary designations. (SOUMF #'s 2, 24, 28).

In addition to misunderstanding his own claim, Rick Rolison goes so far as to confirm that he relied on hearsay to support his claims and that he got this erroneous information form Mary Lou Murray's daughters. Yet, with two lawyers for the estate having been informed by P&G that the claim of lost or misplaced documents was false, the estate knowingly still filed this case based on that unfounded hearsay. (SOUMF #39).

Vicky Shelton testified on behalf of P&G. Shelton informed the estate's representatives that their (P&G's) investigation revealed that Losinger was the beneficiary, and that no attempts were made to change the beneficiary, (SOUMF #'s

55, 56, 61). Further, two separate estate counsel were told by P&G that the allegations of lost information was completely false. (SOUMF #63, 64). Nonetheless, the estate and counsel perpetuated these false claims, even before filing the case, by attempting to perpetuate a fraud on Losinger by advising her that P&G had reliable information the beneficiary forms were lost (SOUMF #63) and (see Appendix 5). Additionally, two federal lawsuits make the same false claim in an effort to undo that which Jeff Rolison himself refused to do.

The Estate's persistence with P&G resulted in the Account being placed on a temporary hold, and also a post to the file only allowing personnel to take numbers and return calls related to the account. (SOUMF #, 56, 61, 62, 64). P&G has no evidence that Losinger was designated through Fraud, Duress or that she made any promises to pay the estate or any other parties. (SOUMF #66).

Shelton confirmed in her capacity with P&G as part of plan administration, that P&G: regularly informed employees that beneficiary designations should be reviewed regularly: beneficiaries could be changed a number of ways; Unmarried Employees could designate anyone and the definition of the relationship doesn't matter, as they can define it anyway they choose[5]; online designations could override paper; P&G has defended no lawsuits claiming loss of Beneficiary forms; P&G has

---

[5] The Estate conflates Rolison's designation of Losinger as cohabitant (SOUMF 52), her marriage (SOUMF 77) and their view of Jeff Rolison's relationship with Losinger as reasons that Losinger is subject to the remedy of Constructive Trust and to bolster an unjust enrichment argument. (Irrespective that none meet the elements to find unjust enrichment). However, Losinger did not know she was named, and the brothers have no idea what or why Rolison did, or failed to do, with his beneficiary designation. Particularly, in light of the fact as set forth by Brian Rolison. that Jeff Rolison knew Losinger was his beneficiary. Further, definition of relationship is not dictated in the plan document other than for purposes of listing and identifying a spouse. (SOUMF 57, 60).

no information regarding employee's personal lives; and, the new system advises employees that they can have their Beneficiary listed on their statements. (SOUMF #'s 54, 57,58, 60, 67, 68, 69).

Therefore, similar to the Court's conclusory statement in *Eisinberg*, "In the case before me, however, no evidence was presented of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or any other wrongdoing by Debtor that would support the imposition of a ***constructive trust***", no such evidence is present here that would support the imposition of a constructive trust on Losinger.

Any evidence that the estate attempts to offer does not meet this Court's own standard for summary judgment, that "**admissible evidence** (emphasis added) be examined in deciding summary judgment motions". None of the available evidence supports any sort of finding that a constructive trust should be imposed on Losinger as restitution for Fraud, Duress, or any inappropriate actions taken by her to be named the sole named beneficiary to the Rolison accounts. Additionally, the estate Representatives' claims and arguments are not supported by any admissible evidence under various tests of admissibility. i.e. Speculation, assumptions, The Dead Man's Statute. Not only do the estate representatives speculate, guess and assume what their brother did or intended, they also attempt through speculation to offer inadmissible testimony designed to impart behavior to Jeff Rolison which would inure to their own benefit and which contradicts this court's prior factual findings.

Statements from the Estate representative, who would benefit from statements they ascribe to Jeff Rolison are not only inadmissible under the

Pennsylvania Dead Man's Act, but are further all wholly inadmissible as they are all based on assumption and speculation. The representatives in their testimony use words and phrases such as:

Brian Rolison imparts his own <u>interpretation</u> of documents he had never seen prior to his brother's death (SOUMF3); Brian Rolison <u>doesn't know</u> what his brother saw when he logged into his account and his <u>brother didn't tell him</u> (SOUMF 10); Brian' Rolison <u>assumed</u> Jeff had changed and removed beneficiaries (SOUMF 11); Brian Rolison disagrees with the previous factual findings of this court (SOUMF #'s15, 34, 49); Brian Rolison <u>thoughts are</u> he wouldn't leave money to Losinger (SOUMF 22); Rick Rolison has <u>no evidence</u> Jeff actually removed or changed any beneficiaries (SOUMF 25); Rick Rolison <u>assumed</u> Murray and his mother were beneficiaries and that Losinger was removed (SOUMF 24, 29, 30); Rick Rolison <u>assumes</u> his daughter was being named as beneficiary (SOUMF 31); Rick Rolison <u>has no knowledge</u> as to what Jeff was planning with his retirement money after his heart attack (SOUMF 33); Rick Rolison <u>never discussed</u> documents with his brother (Jeff) (SOUMF 41); Rick Rolison <u>assumes</u> what his brother's interpretation of the P&G documents was (SOUMF 44).

"'The purpose of the ***dead man***'s act is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent.'" <u>In re Estate of Cecchine, 336 Pa. Super. 111, 117, 485 A.2d 454, 458 [**14] (1984)</u>, quoting <u>Visscher v. O'Brien, 274 Pa. Super. 375, 382, 418 A.2d 454, 458 (1980)</u>. 42 PA. CONS. STAT. § 5930. "The underlying policy is 'to prevent the injustice which might flow from permitting the surviving party to an occurrence to testify favorably to himself and adversely to the decedent, which testimony decedent's representative would be in no position to refute.' " <u>Bacon v.</u>

_Riva,_ No. CIV.A.92–2498, 1993 WL 4132 at *2 (E.D.Pa. Jan. 4, 1993) (quoting _Perlis v. Kuhns,_ 202 Pa.Super. 80, 195 A.2d 156, 158 (1963)).

If an alleged donee fails to establish a prima facie gift by independent testimony, then his or her interest is adverse to the estate's and, consequently, such testimony is rendered incompetent under the **_Dead Man_**'s **_Act_**, former 29 Pa. Stat. § 322 (now _42 Pa.C.S. § 5930_). _In re Estate of Evans, 467 Pa. 336, 356 A.2d 778, 1976 Pa. LEXIS 595 (Pa. 1976)_.

Here, as is similar to _Hera_ and _Evans_, the dead man's act applies because no evidence of a gift to the brothers, or anyone other than Losinger exists or can be established, and therefore, the brothers' testimony is not competent:

The court stated in _Hera_,

"In conclusion, the daughters have not established by clear, convincing, and independent evidence that John Petro intended to give his estate to them. Because they have not met this burden, the **_dead man_**'s act precludes them from testifying about their father's intent regarding these assets.  _Hera v. McCormick, supra; see also Friedeman v. Kinnen, 452 Pa. 365,  [**19]  369, 305 A.2d 3, 4 (1973)_  ("If the alleged donee fails to establish a prima facie gift by independent testimony before he takes the stand, he will not be competent to testify.").

Likewise, the estate cannot produce evidence that comports with any legal standard applicable to this case and Judgment, dismissing the Estate's cross-claim, should be entered in favor of Losinger.  The estate cannot undo that which Jeff Rolison had ample opportunity and notice to do, yet never did.

**Dated:       February 16, 2022**

                            **Respectfully submitted,**

                            */s/ Joseph E. Mariotti*
                            **Joseph E. Mariotti (Bar Id. No.: 65535)**
                            **CAPUTO & MARIOTTI LAW OFFICES**
                            **730 Main Street**
                            **Moosic, Pennsylvania 18507**
                            **Telephone: 570-342-9999**
                            **Fax: 570-457-1533**
                            **Jmariotti@caputomariotti.com**

                            **Counsel for Defendant**
                            **Margaret M. Losinger**