IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PROCTOR & GAMBLE COMPANY** | : | |
| **PLAINTIFF,** | : | |
| | : | NO.: 3:17-CV-762-RDM |
| vs. | : | Honorable Robert D. Mariani |
| | : | |
| **ESTATE OF JEFFREY ROLISON** | : | |
| **MARGARET M LOSINGER** | : | |
| **DEFENDANTS,** | : | |
| | : | |

## ORDER

**AND NOW** this          day of                    2022, in consideration of the Motion for Summary Judgment by the Estate of Jeffrey Rolison and any response made thereto, **IT IS HEREBY ORDERED THAT:**

the Motion is Granted.

_____
The Honorable Robert D. Mariani, J


IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROCTOR & GAMBLE COMPANY<br>    PLAINTIFF,<br><br>vs.<br><br>ESTATE OF JEFFREY ROLISON<br>MARGARET M LOSINGER<br>    DEFENDANTS, | NO.: 3:17-CV-762-RDM<br>Honorable Robert D. Mariani |

**MOTION FOR SUMMARY JUDGMENT
OF ESTATE OF JEFFREY ROLISON
AGAINST PLAINTIFF PROCTOR & GAMBLE
ON ITS COUNTERCLAIM**

    The Estate of Jeffrey L. Rolison, moves for summary judgment pursuant to Federal R.C.P. 56 on its counterclaim against Plaintiff Proctor & Gamble for its breach of fiduciary duty, specifically its duty of disclosure, as to its employee, Jeffrey Rolison.  The facts of this case are unique in the area of beneficiary disputes because the unintended beneficiary stems from the very beginning of Jeffrey Rolison's enrolment in P&G's ERISA Plans and persisted for 28 years despite its being in contradiction to a course of conduct by him observable by P&G. Significantly, those 28 years are marked by P&G's complete failure to provide disclosure of ongoing, transparent beneficiary information to Jeffrey Rolison and other of its employees either through a paper disclosure regime or online.  They are also marked by P&G's obdurate adherence to a 28-year old decision to maintain a status quo in which employees only received notice that they might have a beneficiary hidden to them.  In all that time, P&G did not even conduct an investigation to determine if its management of the beneficiary function could be improved.

    In support of its Motion, the Estate pleads as follows:

1. Plaintiff is an ERISA Fiduciary with respect to its Investment Plans and those of its

employees enrolled in those Plans.

2. ERISA employers as fiduciaries owe duties to their employees which they are to carry out "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" **29 U.S. Code § 1104**.

3. Third Circuit precedent has established unequivocally that ERISA employers have an affirmative duty to disclose information when they know it is material to its employees and when its omission might be harmful to them.

4. Specific information relevant to an employee's beneficiary designation of who will receive his ERISA accounts is per se material. See e.g. Egelhoff v. Egelhoff, 532 U.S. 141 (preempting state law concerning beneficiaries because of that materiality to ERISA).

5. P&G has acknowledged that Plan participants are susceptible to forget who they designated as their beneficiary or even if they had made a beneficiary designation at all.

6. P&G has acknowledged that provision to its employees of ongoing beneficiary disclosure would reduce the incidence of its employees dying with unintended beneficiaries receiving their valuable Plan accounts.

7. In this matter, P&G failed for a prolonged period covering the entirety of Jeffrey Rolison's employment to make material disclosures to him concerning his beneficiary status and similarly failed in its duty as to all similarly situated employees.

8. It made a decision contemporaneous with Jeffrey Rolison's enrolment to limit its disclosure to a repetitive notice that he and its other employees might have a beneficiary hidden to him in the Company's files which he could investigate.

9. P&G knows that ERISA creates an arbitrary construct through its Plan Documents Rule not

readily comprehended by its lay employees or disclosed to them. All of P&G's Plan materials disclose just that there is a possibility the employee has an undisclosed beneficiary designation and doesn't explain that this would prevail over all other arrangements the employee might have made to protect his interest.

10. In the first years of Jeffrey Rolison's employ or up until 2007, it had the means to populate its employees' individualized quarterly and annual account statements with their beneficiary information–it provides multiple specific items of information-but failed and neglected to do so.

11. In contradistinction, P & G has continuously administered its health and life insurance benefits to provide all its employees with transparent, ongoing, annual disclosure of their beneficiaries.

12. From this program, P&G had notice from which it should have known to specifically disclose to him that he had Losinger as a beneficiary since he identified that Mary Lou Murray, another of its employees, had replaced her as his cohabitor/domestic partner.

13. Despite its being able to provide real time, ongoing and transparent disclosure of beneficiary information to Jeffrey Rolison and its employees through online accounts, P&G failed and neglected to integrate all beneficiary data available to it into those accounts, again persisting for years even to the present in its decision to withhold that information.

14. P&G has admitted that it had the capability and means to integrate this data and provided Jeffrey Rolison and all its employees full transparency as to their beneficiaries. In that connection the following facts pertain:

    a. P&G has 40,000 individuals participating in its US ERISA Plans, which includes active employees, retired employees and beneficiaries eligible to continue under its

administration;

b. On the death of any of those individuals, P&G conducts an investigation to identify their beneficiary which proceeds according to the following tree of steps:

   i. It is first determined if the deceased had a beneficiary designated online in which case, the search is done[1];

   ii. If necessary, the search proceeds in "Filebound" which is a database which P&G had made by having all paper designations scanned by an outside contractor or in a database of online designations made through former Recordkeeper JP Morgan Chase ("Past Online Designations")[2];

   iii. If no paper designations or online designations are found then the Plan Default Rules determine the deceased's beneficiary;

c. Of the 40,000 Plan participants, Jeffrey Rolison represents a limited subset of participants ("Subset"), that is, those who have:

   i. Not designated a beneficiary online, which designation would be determinative of their beneficiary, and which would be disclosed to the employee every time he went online;

   ii. Who operates under the mistake of not knowing he has a past beneficiary designation somewhere (in either Filebound or Past Online Designations) whether that beneficiary is who he would intend or not);

---

[1] Unless the death certificate reveals a spouse not reconcilable with the online designation in which case the spouse prevails.

[2] Note that P&G has disclosed that it has created more room for error in that it has not only not taken steps to integrate Filebound, or past paper designations, into its employees online accounts but it has not integrated Past Online Designations.

    d. This subset can be readily ascertained by requesting P&G's Recordkeeper, in this case AON Hewitt, to identify all employees who have no current online designated beneficiaries.

    e. Following the same process it conducts on a participant's death, P&G could match all participants who have no online designated beneficiary with the other beneficiary data in its possession and upload that data into each of its accounts;

    f. P&G argues that errors might arise in this process but the result would be that all employees would have a beneficiary status positively identified to them which they would then definitively know if a change by them was needed.

    g. P&G also maintains that this integration of data could interfere with ongoing beneficiary designations being made by participants but, as it has done in other instances, it can eliminate this risk by implementing a "blackout" [as was done when it transitioned from JP Morgan Chase to AON Hewitt as Recordkeeper].

        A blackout involves turning off some or all online data entry functions for the period needed to integrate all beneficiary data with P&G's employees' online accounts. This is coupled by appropriate noticing to employees that for a period the designation function would not be available. If there was need for an employee to make a designation, P&G has a workaround.

15. P&G has had the capacity to integrate the information contained in its employees' past paper beneficiary designations into their online accounts since at least 2007 so that for the last few years of his life Jeffrey Rolison could have been informed of his actual beneficiary status so he would have known to change it.

16. P&G instead has persisted in a process of waiting until an employee is dead to ascertain the

his beneficiary at which time it is too late for that employee to have made a correction consistent with his actual intentions.

17. P&G has also failed in its fundamental duty to provide its employees a "clear set of instructions," which is a prerequisite to the proper operation of the Plan Document Rule:

> **The point is that by giving a plan participant a clear set of instructions for making his own instructions clear,** ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

> Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan, 555 U.S. 285, 301 (2009).

18. The Estate incorporates by reference the allegations made in its prior Motion for Summary Judgment detailing Jeffrey Rolison's course of conduct evidencing that he operated under the conception that he was appropriately electing and proceeding under the Plan Default Rule for his Estate to be his beneficiary.

19. In this light, P&G also failed in its duty of disclosure to Jeffrey Rolison by providing him misleading information to him through his online account. His online account continually noticed to him the following:

> -- No beneficiaries are saved on this site. , --
>
> Choose Beneficiaries
>
> You don't have any beneficiary designations online. Any prior beneficiary designations on file with the Plan will be retained by P&G, but are not viewable on this site. Plan rules are applied in determining the final beneficiary.

20. The Plan Default Rule was at all times consistently noticed to Jeffrey Rolison as a valid option for him under the Plan Documents to designate his Estate as his beneficiary.

21. The disclosure that he did not have "any beneficiary designations online" would confirm and be entirely congruent his demonstrated state of mind that he had no designated beneficiary and had validly elected for his Estate to take through the operation of the Plan Default Rules, the relevant one being the provision for an unmarried employee to have his Estate take by specifically not making a positive election of a beneficiary. Elements supportive of this are:

    a. That after his Enrolment Application, despite ongoing notices, Jeffrey Rolison made no other positive designations of a beneficiary either through a paper form or online; and

    b. That in the mid-1990s, his state of mind was that Losinger was not his beneficiary.

22. The foregoing demonstrate that P&G breached its fiduciary duties to Jeffrey Rolison and should be ordered to restore to the Estate the Plan Accounts, or their proceeds, he intended it receive.

WHEREFORE, the Estate requests the Court grant its Motion and enter an Order imposing a constructive trust on Losinger and directing her to provide for the distribution of the monies associated with Jeffrey Rolison's account, which are presently being held in escrow, to it.

GOULD LAW ASSOCIATES, PC

*David F. Gould* [signature]

Dated: February 16, 2022

David F. Gould III, Esq.
Attorney I.D. No. 48046
Counsel to Defendant Estate of Jeffrey Rolison
Gould Law Associates, PC
20 S Pine Street
Doylestown, PA 18901
215-345-8933; dfg3law@gmail.com