IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PROCTOR & GAMBLE COMPANY** : <br> **PLAINTIFF,** : <br> : <br> vs. : <br> : <br> **ESTATE OF JEFFREY ROLISON** : <br> **MARGARET M LOSINGER** : <br> **DEFENDANTS,** : <br> : | **NO.: 3:17-CV-762-RDM** <br> **Honorable Robert D. Mariani** |

# ORDER

AND NOW this _____ day of _____ 2022, in consideration of the Motion for Summary Judgment by the Estate of Jeffrey Rolison and any response made thereto, IT IS HEREBY ORDERED THAT:

the Motion is Granted.

_____
The Honorable Robert D. Mariani, J

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROCTOR & GAMBLE COMPANY : <br>    PLAINTIFF, : <br> : <br> vs. : <br> : <br> ESTATE OF JEFFREY ROLISON : <br> MARGARET M LOSINGER : <br>    DEFENDANTS, : <br> : | NO.: 3:17-CV-762-RDM <br> Honorable Robert D. Mariani |

**MOTION FOR SUMMARY JUDGMENT
OF ESTATE OF JEFFREY ROLISON
AGAINST DEFENDANT LOSINGER
ON CROSS CLAIM FOR CONSTRUCTIVE TRUST**

The Estate of Jeffrey L. Rolison, moves for summary judgment pursuant to Federal R.C.P. 56 on its cross-claim for imposition of a constructive trust on Margaret Losinger requiring her to turnover to the Estate all proceeds of Jeffrey Rolison's ERISA Investment Accounts. In support of its Motion, the Estate pleads as follows:

1. In this Interpleader proceeding concerning ERISA, the Court's equitable jurisdiction has been invoked and is operative.

2. In earlier proceedings, the Court determined that Losinger was the designated beneficiary on Jeffrey Rolison's ERISA Investment Accounts solely by virtue of her name having been inscribed on his May 25, 1987 Enrolment Application to P&G seeking to participate in its ERISA Plans.

3. The Court reached this determination by application of legal precepts centered on the Plan Document Rule which, by legislative design, intentionally and arbitrarily limits consideration to only the last named beneficiary who prevails in a Plan regime notwithstanding any other substantive or equitable considerations including the named beneficiary's entitlement to the

1

benefits.

4. The Court has the equitable power and the duty to achieve justice in this case:

> It is well established that "a court of equity has jurisdiction and, in furtherance of justice, will afford relief <u>if the statutory or legal remedy is inadequate</u>, or if <u>equitable relief is necessary to prevent irreparable harm</u>."  "Moreover, 'a court of equity has the power to afford relief despite the existence of a legal remedy when, from the nature and complications of a given case, justice can be reached by means of equity's flexible machinery.'""Once invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies."

<u>Brown v. Plata</u>, 131 S. Ct. 1910, 1944 (2011) (quotation omitted) (emphasis added).

5. The Enrolment Application identified that Losinger's designation, and thus all her entitlement, was dependent on and conditioned by her having then been his "Cohabitor" that being the relationship and basis for Jeffrey Rolison's donative intent in originally making the designation.

6. Within two years thereafter, Jeffrey Rolison acrimoniously ended all relationship with Losinger and all entitlement in Losinger was extinquished.

7. Jeffrey Rolison thereafter had no relationship or feeling for Losinger that would support any donative intent whatsoever directed toward her or make sense of the determination reached by the Court.

8. To the contrary, such were the conditions of their parting that Rolison long held an active antipathy for Losinger.

9. Losinger married Chester L. Losinger on December 3, 1990 and was married to him until his passing December 2000.

**No entitlement in Losinger.**

10. Conspicuously to the lack of entitlement in her, Losinger's counsel has falsely and multiply plead the following:

> Rolison inserted the name of Losinger and allowed Defendant Losinger to remain on the beneficiary designation because Rolison believed that Defendant Losinger was a dear lifelong friend who had relocated with and for him and continued to be a lifelong friend until he died.

See Defendant, Margaret M. Losinger's, Response to Amended Answer, Counterclaims and Crossclaims of Defendant Estate of Jeffery Rolison.[1]

11.  This false representation, was contradicted by, among other things, his client's testimony at deposition that:

    a.    She had never seen the foregoing pleading; and

    b.    Her last contact with Jeffrey Rolison had been 15 years prior to his death when after her husband died December 2000  "Jeff gave me my -- sent me condolences for  the loss of my husband."

12.  Further, Losinger made a telephone call to Jeffrey Rolison's home phone number ostensibly looking for Murray and left a message on his answering machine in late March, early April which undisputedly shows that her relationship with Jeffrey Rolison was long done; in it she related:

> "This is Peg Losinger. Ah, this used to be Jeff Rolison's phone number at one time– Ah, I looked on the internet–we were together for a number of years–I looked on the internet at Easter and found out he had passed. I am trying to get a hold of Mary Lou Murray...."

13.  In addition, in response to the Estate's two Requests for Documents and two sets of Interrogatories directed to her,  Losinger provided no substantive response whatsoever to support

---

[1] His doing so was a conscious exploitation of Jeffrey Rolison's not being available to speak for himself.

her claim–no documents and no specific relevant information. Her response was limited to:

    a. Boilerplate, non-specific responses; and

    b. A copy of P&G's administrative record.

\* the first was made earlier in the proceedings and the second recently when proceedings on the Estate's crossclaim and counterclaim commenced.

14. Shortly after evicting Losinger, Jeffrey Rolison began what became a long term cohabitative relationship with Mary Lou Murray which continued without interruption up until June 2014) or shortly before his death on December 14, 2015.

15. Consistently with their relationship, Rolison had and expressed his donative intent toward Murray by naming her beneficiary with respect to his P&G fixed benefits of life insurance and health insurance. In his Annual Enrolments in those benefits, the following prevailed:

    a.    In designating Murray as his beneficiary to his health and life insurance, Jeffrey Rolison identified her as being in relationship with him as his domestic partner;

    b.    Up until his mother's passing, Jeffrey Losinger named Murray and his mother as co-beneficiaries to his life insurance with P&G and after his mother passed he named Murray his sole beneficiary to his life insurance;

    c.    After Murray left him and left his home, ceasing then to be his "domestic partner," at the next occurring Annual Enrolment period, Jeffrey Rolison removed her as his beneficiary to his life and health insurances.

16. As earlier documented in proceedings on the Estate's prior Motion for Partial Summary Judgment to Have it Determinined Beneficiary, the Estate evidentiarily demonstrated that as a matter of reasonable inference Jeffrey Rolison consistently acted over the course of his employment by P&G to designate his Estate his beneficiary through the Plan's default rule which provides that an unmarried employee's Plan Accounts go to his Estate if he does not

4

positively designate a beneficiary.

17. The Estate incorporates the foregoing material by reference.

18. Brian Rolison testified in deposition that as of the mid-1990s, his brother Jeffrey understood Losinger to no longer be his beneficiary, that she had been removed. He testified that:

> "When [his employer switched to new retirement plans], I called my brother to try to get some information on this, how it worked. Especially with beneficiary designations. And I asked him at that time did you ever remove Peg from your designation. He said yes."

19. Losinger's holding any "beneficiary status" in relation to Jeffrey Rolison can only be seen as the product of mistake.

20. That mistake was induced by the following elements, among others:

    a. The vast passage of time between his making the Enrolment Application and his death within which vast transformations in his life and in the operational and technological context of the Plans took place;

    b. The many judicially recognized human factors which cause unintended beneficiary designations foremost among which involve people having ended the relationships, or becoming "divorced," that caused the designation originally, in relationship becoming "divorced" the in which he and others were managing their Plan accounts; and

    c. P&G's complete failure in its fiduciary duty to disclose to both Jeffrey Rolison and indeed to all its similarly situated employees the per se material information concerning the employee's specific beneficiary status so a mistaken designation could be corrected.

    d. P&G's constant online notice to Jeffrey Rolison that he had no "designated beneficiary online," which, in the absence of positive disclosure, only served to confirm his clearly indicated understanding that he had no beneficiary except through his designation of his Estate by intentional omission, by which he was consciously relying on the Plan Default Beneficiary Rules.

21. The Estate incorporates by reference the relevant materials of its Motion for Summary Judgment on its Counterclaim against P&G, which show that P&G's comprehensive breach of its fiduciary duty of disclosure as to Jeffrey Rolison and indeed as to all its similarly situated employees caused the mistake:

22. The Estate is entitled to the entry of summary judgment because its case meets all the requirements for imposition of a constructive trust and Losinger cannot show any material issues of fact remaining to be resolved.  has no countervailing rebuttal case.

23. The formulations of law stated by this Court in <u>Spinner v. Fulton</u>, 777 F. Supp. 398, 403 (M.D. Pa. 1991) require entry of summary judgment for the Estate.  The following are the relevant principles:

    a.    A constructive trust should be imposed when "the facts show that unjust enrichment would ensue as a result of a breach of a confidential relationship, or fraud, duress, undue influence, or mistake."

*In this case Losinger would be unjustly enriched because of a mistake.*

    b.    Identically to this case, <u>Spinner</u> involved a mistake as to a beneficiary designation in favor of a long estranged husband, which gave sufficient cause to impose a constructive trust.

    24.    "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest <u>equity</u> converts him into a trustee."

*There is no basis in good conscience under which Losinger has any right or entitlement to Jeffrey Rolison's accounts over the Estate.*

    a.      "the imposition of the trust does not require proof that the parties intended it."

    b.      "The purpose and spirit of the law of constructive trusts is best stated thus:

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee. . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief. "

Citation omitted.

25. Of particular relevance here is that the Spinner Court decided in favor of the deceased's family solely on the basis that the evidence demonstrated that the other party, an estranged husband, had no relationship to the deceased. Consequently, the prospect of his being unjustly enriched without deserving or entitlement mandated its imposition of a constructive trust, which is the result that should prevail here.

    **WHEREFORE,** the Estate requests the Court grant its Motion and enter an Order imposing a constructive trust on Losinger and directing her to provide for the distribution of the monies associated with Jeffrey Rolison's account, which are presently being held in escrow, to it.

*/s/ David F. Gould*

GOULD LAW ASSOCIATES, PC

Dated: February 16, 2022

David F. Gould III, Esq.
Attorney I.D. No. 48046
Counsel to Defendant Estate of Jeffrey Rolison
Gould Law Associates, PC
20 S Pine Street
Doylestown, PA 18901
215-345-8933; dfg3law@gmail.com