IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PROCTOR & GAMBLE | : | |
|     PLAINTIFF, | : | |
| | : | NO.: 3:17-CV-762 |
| vs. | : | Honorable Robert D. Mariani |
| | : | |
| ESTATE OF JEFFREY ROLISON | : | |
| MARGARET M. LOSINGER | : | |
|     DEFENDANTS, | : | |
| | : | |

### ESTATE'S REPLY SUPPORTING ITS
### MOTION FOR LEAVE TO SUPPLEMENT

The Estate has motioned for leave to supplement its extant Statements of Material Undisputed Facts[1] by providing an Amended Statement and a Response to Plaintiff's Statement of Material Facts. As explained in its Memorandum, the Estate's principal purpose in this supplementation is to correct materially misleading statements and ensure an accurate evidentiary record before the Court.

Proctor & Gamble and Losinger have both responded querulously rather than substantively meaning they argue by casting technical aspersions at the Estate rather than addressing its effort to ensure a properly developed evidentiary record is before the Court. The substantive purposes of the relevant Local Rule 56.1 are intended to achieve that end:

---

[1] Prosecuting two motions for summary judgment, the Estate filed a Statement of Material Undisputed Facts as to its case against Losinger and as to its case against Proctor & Gamble; it did file a Counter Statement to Losinger's Statement. The supplementation submitted principally pertains to its case against Proctor & Gamble which is addressed to the Company's breach of its fiduciary duties of disclosure.

"As the Third Circuit has explained with respect to this local rule:

'Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District. As opinions from that Court have explained, the Rule "is essential to the Court's resolution of a summary judgment motion" due to its role in "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." [cites omitted] ("<u>The purpose of this rule is to structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion.</u>" (internal quotation marks omitted))...<u>Weitzner v. Sanofi Pasteur Inc</u>., 909 F.3d 604, 613 (3d Cir. 2018)." [2]   (emphasis added)

The Estate's Motion and supplementation are intended to serve the purposes of this Local Rule.

In the balance involved in decision on a request to amend, P&G and Losinger's Memoranda first avoid address to the "why" or substantive purposes of the Estate's Motion and then fail to demonstrate the prejudice to them required to counter that why. That is, they complain but do not demonstrate that they will be "unfairly disadvantaged or deprived of the opportunity to present facts of evidence unless leave to amend is denied."[3]   There is no possibility of prejudice because the same ocean of evidence is available to all parties. In this connection, they suggest, without elucidation, that the Estate is trying to avoid a "deemed admissions"

---

[2] <u>Castillo v. Maguire</u>, 3:13-CV-2953, at *2 (M.D. Pa. Apr. 14, 2022)

[3] <u>Bechtel v. Robinson</u>, 886 F.2d 644, 652 (3d Cir. 1989).

1

problem when the Estate's extant Statements of Material Undisputed Fact are comprehensive and respond to all their factual assertions.[4]

More perfidiously, Losinger and P&G are arguing to prevent correction of three falsehoods which they have full notice to know are contradicted by the present, evidentiary record. They should know this particularly from the comprehensive deposition testimony given by P&G's National Retirement Accounts Manager, Vicky Shelton, on January 26, 2022. It is this material that the Estate principally draws on in its supplementation. Their tactics in this regard do not seem appropriate under Professional Rule of Responsibility 3.3, concerning "Candor before the Tribunal."[5] As officers, one would hope they would be deferential to the "truth-finding" function of the Court.

---

[4] The Estate acknowledges that it did not originally file a Counter Response to P&G's Statement of Facts but offers that this should be considered "excusable neglect" because it did comprehensively address all P&G's cited facts in its original Statement.

[5] Rule of Professional Responsibility 3.3: Candor Toward the Tribunal, which provides as relevant that:

Advocate
(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
...
(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

Ironically, it is P&G's violation of Local Rule 56.1 that points up the erroneous material in the evidentiary record the Estate seeks to ensure be fully cured by its supplementation. Local Rule 56.1 requires that "[s]tatements of material facts include references to the parts of the record that support the statements." In its Statement of Material Undisputed Facts, however, P&G proffers three statements made by the Court during the earlier summary judgment process, but makes no citation to the "record" to support them. This is disingenuous because P&G (and Losinger) knows that they were and are contradicted by the evidentiary record particularly at its present state of development and particularly by Vicky Shelton's recent testimony.

P&G cites the following statements of the Court which were inappropriate originally because they assumed without any evidence that Jeff Rolison (1) knew Losinger remained his designated beneficiary; but (2) did nothing to change that state; despite (3) having ready means to do so through P&G's online system.[6] The Statements are:

> 18. In short, P&G "routinely informed [Jeff Rolison] of his option to designate an online beneficiary, or otherwise, his previous designated

---

[6] The Estate notes that these assumptions were reached during a time of transition following Judge Caputo's passing and in a case with unique complexities concerning a vast passage of time and nuances turning not so much on positive acts but on omissions, notably by P&G in not providing specific beneficiary information to Jeffrey Rolison and most of its employees and in the allowance in the Plan default rules for an employee's beneficiary designation by doing nothing.

beneficiary would receive his benefits."23 [Opinion, Analysis, Doc. 103, p. 12.][7]

19. Thus, as this Court found, Jeff Rolison "had designated a beneficiary on a paper form, he was advised that such a designation remained valid, he was advised that the paper form designation would not automatically be reflected in the online statement, and he took no action to change the beneficiary indicated on the paper form nor did he express an intent to do so though some affirmative action."24 [Order (Estate's Motion for Reconsideration), Doc. 111, p. 5, fn 1.] [8]

20. In other words, Jeff Rolison "knew he needed to take affirmative steps to change his previous beneficiary, and was aware that he could change his beneficiary online, but simply failed to do so."25 [Opinion, Doc. 103, p. 12-13.][9]

The Estate's supplemental Statements serve to conclusively demonstrate that none of these statements are remotely true; they were and are directly and inferentially contradicted by the present, developed evidentiary record. Vicky Shelton's deposition testimony, taken January 26, 2022, is particularly comprehensive and

---

[7]This statement is materially misleading because it suggests, without any evidence and in contradiction to fuller inferential and direct evidentiary record more recently developed, that Jeffrey Rolison knew his 1987 enrolment designation of Losinger was still viable

[8]Among other things, there has never been any evidence that Jeffrey Rolison knew of Losinger's retaining her entitlement to his accounts yet did nothing about despite his antipathy to her, their having no relationship and a lifetime of relationships succeeding theirs. Brian Rolison also testified that his brother had told him in the mid-1990s that Losinger had been removed.

[9]Vicky Shelton's testimony completely nullified this proposition. Estate designations had not been functionally available over the course of Jeffrey Rolison's online experience and did not become until the switch to AON Hewitt, or three months before his death and there was no notice to him of this new function or of a need to resort to it.

salient in this regard and this is the source for much of the Estate's supplementation, which it felt compelled to offer because P&G sought to subvert record evidence by asserting the Court's prior statements as if they would trump evidence because uttered by the Court.

**WHEREFORE**, because the requested supplementation will "facilitate(s) the court's direct and accurate consideration" of the pending motions and visit no prejudice on the opposing parties, the Estate requests the Court grant its Motion and allow the supplementation of the record provided by the two documents attached to it.

GOULD LAW ASSOCIATES, PC

*/s/ David F. Gould*

Dated: June 7, 2022

David F. Gould III, Esq.
Attorney I.D. No. 48046
Counsel to Defendant Estate of Jeffrey Rolison
Gould Law Associates, PC
20 S Pine Street
Doylestown, PA 18901
215-345-8933; dfg3law@gmail.com