# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PROCTOR & GAMBLE U.S. BUSINESS SERVICES COMPANY, *As Plan Administrator And On Behalf Of The Procter & Gamble Profit Sharing Trust and Employee Stock Ownership Plan,* et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:17-CV-00762 |
| v. | (MEHALCHICK, J.) |
| ESTATE OF JEFFREY ROLISON, et al., | |
| Defendants. | |

## MEMORANDUM

Procter & Gamble ("P&G") filed this lawsuit under the Employee Retirement Income Security Act (ERISA) 29 U. S. C. §§ 1001 et. seq. as plan administrator on behalf of The Procter & Gamble Profit-Sharing Trust and Employee Stock Ownership Plan ESOP and the Procter & Gamble savings plan. (Doc. 1). This action was brought to determine who is entitled to decent Jeffery Rolison's ("Rolison") investment plan funds following his death in 2015. (Doc. 1). The initial complaint was filed in April 2017 against Margaret Losinger ("Losinger") and the Estate of Jeffrey Rolison ("the Estate"). (Doc. 1). On July 21, 2020, pursuant to ERISA's plan documents rule, this Court directed Proctor and Gamble to award the investment plan funds to Losinger. (Doc. 103). Remaining now are multiple cross-claims asserted by the Estate against P&G and Losinger.

Before the Court are four motions for summary judgment. (Doc. 161; Doc. 164; Doc. 165; Doc. 166). For the following reasons, P&G's motion for summary judgment (Doc. 166) will be **GRANTED**; Losinger's motion for summary judgment (Doc. 161) will be

**GRANTED**; and both the Estate's motions for summary judgment (Doc. 164; Doc. 165) will be **DENIED**.

## 1. BACKGROUND

This case revolves around the investment funds Rolison accrued while employed at P&G.[1] Rolison enrolled in an investment plan ("the Plan") with P&G on April 27, 1987. (Doc. 44, ¶ 14; Doc. 175, ¶¶ 1, 5). At that time, he designated his then-girlfriend and cohabitant Margaret M. Sjostedt, now Margret Losinger ("Losinger"), as the sole beneficiary of the Plan. (Doc. 44, ¶ 6; Doc. 172, ¶ 3; Doc. 175, ¶ 5). This designation was recorded on a paper form and signed by Rolison. (Doc. 103, at 3; Doc. 175, ¶ 5). Rolison and Losinger broke up in 1989. (Doc. 172, ¶ 4; Doc. 189-2, at 34). Rolison failed to subsequently change the Plan's beneficiary designation.[2] (Doc. 175, ¶ 7; Doc. 176-1, at 6-7).

After working for P&G for 28 years, Rolison died on December 14, 2015. (Doc. 44, ¶ 15; Doc. 172, ¶ 1; Doc. 175, ¶ 21). Over the course of his employment, Rolison accumulated a total of $754,006.54 in the Plan's accounts. (Doc. 44, ¶¶ 12-14). On numerous occasions

---

[1] The following factual background comes from the amended complaint, the parties' statements of material fact, accompanying exhibits, and this Court's previous Memorandums and Orders.

[2] In 2002, Rolison began a relationship with his co-worker, Mary Lou Murray ("Murray"). The couple purportedly were engaged in a common law marriage. Murray was listed as a beneficiary of Rolison's life insurance and health benefits at each annual enrollment window during the relationship. (Doc. 172, ¶ 7; Doc. 175, ¶ 38). Rolison's relationship with Murray ended in 2014. (Doc. 103, at 14; Doc. 172, ¶ 7). Never, during the course of their relationship or after, was Murray designated as a beneficiary of the Plan. (Doc. 103, at 13). Accordingly, Murray was dismissed from this action on December 15, 2021. (Doc. 103, at 17 Doc. 104).

between 1989 and 2015, P&G notified Rolison that he could change his beneficiary designation for the Plan. (Doc. 103, at 4; Doc. 175, ¶¶ 10-15). P&G sent Rolison information about the company's transition to an online beneficiary designation system, which started as an option in 2007, before fully transitioning online in 2015. (Doc. 103, at 4; Doc. 175, ¶¶ 8, 11-12; Doc. 176-3). These notifications often included a recommendation that Rolison review his beneficiary designation. (Doc. 175, ¶¶ 35, 42; Doc. 176-8, at 6). This Court previously found that P&G "routinely informed" Rolison "of his option to designate an online beneficiary or, otherwise, his previous paper designated beneficiary would receive his benefits." (Doc. 101, ¶¶ 15, 18; Doc. 103, at 12; Doc. 175, ¶ 10). Additionally, Rolison was aware of how to change his beneficiary designation. (Doc. 103, at 12-13). Still, even with notice and directions how to do so, Rolison never designated a new beneficiary for his P&G investment plan. (Doc. 103, at 13; Doc. 175, ¶ 7; Doc. 176-1, at 8). Without citing to the record or otherwise supporting their statement with evidence, the Estate maintains, "Jeffrey Rolison operated under a comprehension that Losinger was no longer his beneficiary and never intended the 1987 Enrollment Application to remain viable as a beneficiary designation." (Doc. 172, ¶ 12). Pointing to deposition testimony from the Estate, Losinger refutes this conclusion. (Doc. 163, ¶ 12; Doc. 163-1, at 56-57).

This case has a long procedural history with multiple motions for summary judgment, a denied motion for certification to appeal, and multiple motions for reconsideration. (Doc. 103; Doc. 104; Doc. 111; Doc. 112; Doc. 125; Doc. 126; Doc. 136; Doc. 137); *see Procter & Gamble U.S. Bus. Servs. Co. on Behalf of Procter & Gamble Profit Sharing Tr. & Emp. Stock Ownership Plan v. Est. of Rolison*, No. 3:17-CV-762, 2020 WL 4195887 (M.D. Pa. July 21, 2020), *on*

3

*reconsideration in part*, No. 3:17-CV-762, 2021 WL 4130550 (M.D. Pa. Sept. 9, 2021), *and on reconsideration in part*, No. 3:17-CV-762, 2021 WL 4130550 (M.D. Pa. Sept. 9, 2021).

Currently before the Court are four motions for summary judgment filed in February 2022. (Doc. 161; Doc. 164; Doc. 165; Doc. 166). The Estate and P&G have filed cross-motions for summary judgment regarding the Estate's claim that P&G violated its fiduciary duty to Rolison under ERISA. (Doc. 164; Doc. 166). The Estate and Losinger have filed cross-motions for summary judgment addressing the Estate's claim that it is entitled to the equitable remedy of a constructive trust. (Doc. 161; Doc. 165). Each motion is fully briefed. On February 12, 2024, the Undersigned Judge was assigned to this case. Oral argument on the outstanding motions was held on April 22, 2024. Accordingly, this matter is ripe for discussion.

## 2. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

4

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex, 477 U.S. at 323*. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

**3.  DISCUSSION**

A.  THE ESTATE'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST P&G

The Estate claims P&G violated its fiduciary duty under ERISA to disclose material information to Rolison. (Doc. 181, at 5, 7). Specifically, the Estate argues P&G should have provided Rolison with specific information regarding his designated beneficiary. (Doc. 181, at 2). In the Estate's view, P&G "has indolently pursued for at least 25 years a policy of only providing generic beneficiary information to its employees and never informing them of their specific beneficiary status." (Doc. 181, at 5). P&G refutes this contention, arguing that this Court has already determined P&G fulfilled its disclosure requirements and that "the Estate [ ] fails to marshal any evidence disproving that P&G consistently and adequately informed Jeff Rolison about the status of, and how to change, his beneficiary designation." (Doc. 174, at 4-6). This Court agrees.

The "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (quotation marks omitted) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, (1990)); *see also Boyles v. Am. Heritage Life Ins. Co.*, 383 F. Supp. 3d 470, 494 n.6 (W.D. Pa. 2019), *aff'd*, 809 F. App'x 104 (3d Cir. 2020). To do so, ERISA "establishes standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Edmonson*, 725 F.3d at 413. Specifically, "ERISA defines the circumstances under which a person or entity is a fiduciary, sets forth the duties of these fiduciaries, and provides various causes of action designed to promote the enforcement of these duties." *Edmonson*, 725 F.3d at 413.

To succeed on a breach of fiduciary duty claim under ERISA, the Estate must show (1) P&G was acting in a fiduciary capacity; (2) P&G failed to adequately inform Rolison of his beneficiary designation; (3) P&G knew of the confusion generated by its silence; and (4) detrimental reliance by Rolison. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228-29 (3d Cir. 2009); *see also Wolff v. Aetna Life Ins. Co.*, No. 4:19-CV-01596, 2022 WL 1672128, at *9 (M.D. Pa. May 25, 2022)*, on reconsideration in part*, No. 4:19-CV-01596, 2022 WL 17156911 (M.D. Pa. Nov. 22, 2022), *leave to appeal denied*, 77 F.4th 164 (3d Cir. 2023). While it is undisputed that P&G acted as a fiduciary to Rolison, thus satisfying element one, the Estate has failed to put forth any evidence establishing any of the additional elements of its breach of fiduciary claim.

Courts typically review elements two and three, whether the fiduciary failed to adequately inform the employee of their beneficiary designation and whether the fiduciary knew or should have known of the confusion generated by its silence, in conjunction. *See In re Unisys*, 579 F.3d at 228; *see also Canestri v. NYSA-ILA Pension Tr. Fund & Plan*, No. CIV.A. 07-1603 JLL, 2010 WL 4291489, at *10 (D.N.J. Oct. 22, 2010) ("In analyzing whether a breach of duty occurred, courts have found it useful to analyze the second element, a misrepresentation or inadequate disclosure, together with the third element, which requires that the misrepresentation or omission be material."). "A misleading statement or omission by a fiduciary is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision or a harmful decision regarding benefits." *In re Unisys*, 579 F.3d at 228. It not necessary to prove that the fiduciary had actual knowledge that the employee was misled, the employee need only demonstrate

that the fiduciary knew or should have known that the employee would be confused by its failure to disclose material information. *In re Unisys*, 579 F.3d at 228.

This Court has already established multiple times that P&G adequately informed Rolison of the status of and how to change his beneficiary designation. (Doc. 103, at 4-5; Doc. 111, at 5 n.1; Doc. 174, at 10). As indicated by P&G, this Court previously stated:

> Rolison had designated a beneficiary on a paper form, *he was advised that such a designation remained valid*, *he was advised that the paper form designation would not automatically be reflected in the online statement*, and he took no action to change the beneficiary indicated on the paper form nor did he express an intent to do so though [sic] some affirmative action.

(Doc. 111, at 5 n.1; Doc. 174, at 10) (emphasis added).[3]

This Court also previously found:

> Indeed, the Estate further recognizes that Rolison logged into his online account multiple times prior to his death, realized he had not designated an online beneficiary, and chose not to designate such. (See Doc. 101 at ¶¶ 15, 18). *These admissions further undercut the Estate's claims as it shows that Rolison knew that he needed to take affirmative steps to change his previous beneficiary, and was aware that he could change his beneficiary online, but simply failed to do so.*

(Doc. 125, at 12) (emphasis added)

"Courts tend not to revisit issues already decided, a tendency named the 'law of the case' doctrine." *Sikkelee v. Precision Airmotive Corp.*, 45 F. Supp. 3d 431, 444 (M.D. Pa. 2014), *vacated and remanded*, 822 F.3d 680 (3d Cir. 2016), *and on reconsideration sub nom. Sikkelee v. AVCO*

---

[3] According to P&G, "[t]hese findings are the law of the case and on their own preclude judgment against P&G" because "[u]nder the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." (Doc. 174, at 10 n.11); *Todd & Co., Inc.* v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982).

*Corp.*, No. 4:07-CV-00886, 2017 WL 3310953 (M.D. Pa. Aug. 3, 2017), *aff'd sub nom. Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701 (3d Cir. 2018) (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)).While the law of the case doctrine does not call for a complete limitation, in this case the Court's previous findings implicate the same issues and evidence now again before the Court. *See Williams*, 130 F.3d at 573. Accordingly, the Court will not revisit the issue of the adequacy of P&G's numerous advisements to Rolison that he should check and change his beneficiary designation.

To contradict this finding, the Estate relies on another of the Court's previous Orders in which the Court granted the Estate leave to amend. (Doc. 181, at 2). This Order was filed early in this litigation on October 19, 2018, without the benefit of discovery. (Doc. 69). The Estate quotes the following language: "While P&G fairly notes that Rolison did in fact receive information from P&G pertaining to beneficiary designations generally, it is not clear whether this alleged information contains the positive, individualized notice of Rolison's beneficiary elections the Estate alleges P&G was required to disclose." (Doc. 69, at 8; Doc. 181, at 2).

As this Court previously held while addressing one of the Estate's motions for reconsideration, the law of the case doctrine does not apply to this specific Order because "the doctrine applies to issues that were actually decided by the court or decided by necessary implication." (Doc. 111, at 5 n.2). Furthermore, as indicated by P&G, "numerous courts have rejected the argument that granting leave to amend a complaint precludes a finding in favor of defendant on other dispositive motions," and mandates application of the law of the case doctrine. (Doc. 185, at 7); *see, e.g., United States v. Andover Subacute & Rehab Ctr. Servs. One, Inc.*, No. CV 12-03319-SDW-SCM, 2019 WL 4686963, at *7 n.5 (D.N.J. Sept. 26, 2019); *see, e.g.,*

*Care Envtl. Corp. v. M2 Techs., Inc., Civ.* No. 05-1600, 2006 WL 148913, at *8 n.9 (E.D.N.Y. Jan. 18, 2006) ("Plaintiff argues that the 'law of the case doctrine' mandates that the claims added by the amended complaint [ ] not be dismissed because in permitting plaintiff to amend the complaint the Magistrate Judge ruled that the amendment was not 'futile.' However, the decision to grant a request to amend a complaint and the decision to deny a motion to dismiss are two different issues, and one cannot constitute the law of the case for the other."). Additionally relevant here, the Court's October 19, 2018 Order does not cite any caselaw supporting the Estate's allegation that P&G was required to provide him with particularized beneficiary notices, a contention that is refuted by longstanding Third Circuit precedent that supplies ERISA does not impose an individualized disclosure duty on employers. (Doc. 69, at 8); *see e.g., Allen v. Atlantic Richfield Retirement Plan*, 480 F. Supp. 848 (E.D. Pa. 1979), *aff'd*, 633 F.2d 209 (3d Cir. 1980) (stating that "Congress did not intend to impose a duty to provide the kind of individualized attention urged by plaintiff here, but rather envisioned that a fiduciary could discharge its obligations through the use of an explanatory booklet," and that "The interpretation urged by plaintiff would impose a virtually impossible burden on the administrator of the Plan, which has some 21,000 employees. It is almost inconceivable that ARCO or the Plan could have sufficient information about … the individual needs of each of the members to enable ARCO or the Plan to render such service."); *see also Shlomchik v. Retirement Plan of Amalgamated Ins. Fund*, 502 F. Supp. 240 (E.D. Pa. 1980), *aff'd*, 671 F.2d 496 (3d Cir. 1981) (finding "no duty on the part of defendants to provide this particular employee with individualized attention"). Accordingly, this Court again finds the law of the case doctrine does not apply to the October 19, 2018 Order. (Doc. 111, at 5 n.2).

Setting aside the Court's previous findings, the Estate has failed to put forward any evidence that Rolison was confused by P&G's numerous disclosures or that P&G knew or should have known that their disclosures were confusing.[4] Instead, as this Court previously found, the record supports that Rolison was affirmatively and consistently notified for 13 years that his online account lacked the designation of a beneficiary and that, without an online beneficiary, his paper beneficiary designation would remain valid. (Doc. 103, at 12; Doc. 111, at 5 n.1; Doc. 125, at 12). Nothing the Estate points to provides otherwise or suggests confusion on Rolison's part. Likewise, based on the record before it, the Court cannot conclude that P&G's failure to provide employees with specific beneficiary information in the manner suggested by the Estate creates a substantial likelihood that reasonable P&G employees will be misled in making adequately informed retirement decisions. Accordingly, the Estate has failed to establish the second and third elements of its ERISA breach of fiduciary duty claim.

Even if the Estate was able to satisfy elements two and three, it has failed to establish the fourth element of their claim, detrimental reliance by Rolison. *See In re Unisys*, 579 F.3d at 233. "Detrimental reliance encompasses both an injury and reasonableness." *Hendrian v.*

---

[4] In its brief in support of its motion for summary judgment, the Estate does not cite to any record evidence to support its argument that it is entitled to summary judgment. (Doc. 181). In its brief in opposition to P&G's motion for summary judgment, the Estate references self-serving, deposition testimony from Estate Representative Brian Rolison supposing that Rolison had no knowledge of his beneficiary designation. (Doc. 176-8; Doc. 183, at 7-8). This deposition testimony is later contradicted by Brian's own testimony in which he admits that Rolison was provided with the information needed to determine and change his beneficiary. (Doc. 163-1, at 38-41, 63, 80).

*AstraZeneca Pharms. LP*, No. 3:13-CV-00775, 2015 WL 404533, at *10 (M.D. Pa. Jan. 29, 2015); *see Shook v. Avaya Inc.*, 625 F.3d 69, 73 (3d Cir. 2010). "To establish this element, the plaintiff must have reasonably taken some action, or refrained from taking certain actions, regarding benefits or retirement as a result of the misrepresentation." *Hendrian*, 2015 WL 404533, at *10.

There no record evidence in this case that supports the Estate's position that Rolison failed to change his beneficiary status because of any misrepresentation or omission on P&G's part. Instead, again, the record reflects that P&G warned Rolison to check and change his beneficiary designation numerous times between 1987 and 2015 and that "Rolison knew that he needed to take affirmative steps to change his previous beneficiary status," but that he "simply failed to do so." (Doc. 103, at 12-13; Doc. 176-2, at 11; Doc. 176-3, at 5; Doc. 176-4, at 7, 10; Doc. 176-5; Doc. 176-8; Doc. 176-9, at 7-9). As P&G correctly argues, the Estate has offered "no direct evidence [ ] showing that Jeff Rolison did not know that Losinger was his beneficiary." (Doc. 185, at 9). Further, the Estate has not come forward with evidence that Rolison's failure to change his designated beneficiary is attributable to Rolison's misguided belief that Losinger was not his beneficiary. This Court previously concluded as much, finding that even though Rolison had logged into his online beneficiary account "multiple times prior to his death, [and] realized he had not designated an online beneficiary," Rolison still took no affirmative action towards changing his designated beneficiary. (Doc. 103, at 12). These actions do not reflect detrimental reliance and no reasonable fact finder could not conclude otherwise. Accordingly, P&G's motion will be **GRANTED** and summary judgment will be entered in its favor. (Doc. 166). The Estate's cross-motion for summary

judgment will be **DENIED**. (Doc. 165). The Estate's cross-claim against P&G will be **DIMISSED**.

### B. THE ESTATE'S CLAIM FOR A CONSTRUCTIVE TRUST

On July 21, 2020, this Court found that, under ERISA, Losinger "is the beneficiary under the Plans and therefore is entitled to the funds" therein. (Doc. 103, at 16). Notably, the Court also found that the Estate had failed to produce evidence supporting its averment that Rolison had made an effort to change his beneficiary designation. (Doc. 103, at 12). The Estate now requests that this Court establish constructive trust in its favor, therefore depriving Losinger of the Plan's funds. (Doc. 162, at 4; Doc. 171, at 1). Arguing its entitlement to summary judgment, the Estate claims that "equity and prevention of unjust enrichment require the imposition of a constructive trust on Losinger to convey." (Doc. 171, at 8). Asserting she is entitled to summary judgment on this issue, Losinger argues that the "estate cannot produce any evidence, factual support or legal basis to justify the imposition of the equitable remedy of constructive trust." (Doc. 162, at 7). Given the high evidentiary burden imposed on those seeking the equitable remedy of a constructive trust, the Court agrees with Losinger.

The "ERISA does not preempt the imposition of a constructive trust on the proceeds of [challenged distributions]." *McCarthy v. Est. of McCarthy*, 145 F. Supp. 3d 278, 288 (S.D.N.Y. 2015). The Supreme Court has held that, when faced with an entitlement challenge regarding plan benefits under ERISA, the administrator should look to the "plan documents" and distribute the assets accordingly. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 303 (2009). This is known as the plans document rule. *Kennedy*, 555 U.S. at 303.

However, the Third Circuit along with other circuits has found that once proceeds have been distributed in accordance with the plans documents rule, in subsequent lawsuits the "parties' rights and equities may be determined without regard to ERISA because post-distribution suits do not interfere with any of those objectives." *McCarthy*, 145 F. Supp. 3d at 288; *see Est. of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012); *see also Andochick v. Byrd*, 709 F.3d 296, 299–301 (4th Cir. 2013); *see also Gelschus v. Hogen*, 47 F.4th 679 (8th Cir. 2022); *Metlife Life & Annuity Co. of Connecticut v. Akpele*, 886 F.3d 998, 1007 (11th Cir. 2018). Accordingly, because the Court has found that under the ERISA P&G is to distribute the Plans' funds to Losinger, the Estate is now entitled to assert a claim against Losinger in pursuit of this distribution. (Doc. 103). Here, the Estate has done so by arguing this Court should establish a constructive trust on its behalf to avoid Losinger's unjust enrichment.

The issue of whether a constructive trust should be imposed is a matter of state, not federal law. *In re Visiting Nurse Ass'n of W. Pennsylvania*, 143 B.R. 633, 637 (W.D. Pa. 1992), *aff'd*, 986 F.2d 1410 (3d Cir. 1993). A constructive trust is a remedy, not a separate cause of action. *Kaiser v. Stewart*, No. CIV. A. 96-6643, 1997 WL 476455, at *19 (E.D. Pa. Aug. 19, 1997). "A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Denny v. Cavalieri*, 297 Pa. Super. 129, 133, 443 A.2d 333, 335 (1982); *see also Roberson v. Davis*, 397 Pa. Super. 292, 296, 580 A.2d 39, 41 (1990); *see also State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr., Inc.*, 388 F. App'x 125, 129 (3d Cir. 2010). "Such a trust may arise where there is a breach of confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake." *Denny*,

14

297 Pa. Super. at 133. "The controlling factor is not the specific intent between the parties to create a constructive trust but whether imposition of a constructive trust is necessary to prevent unjust enrichment." *Roberson*, 580 A.2d at 41. Unjust enrichment requires a showing of: "(1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 277 (3d Cir. 2007); *see also Rosemeier v. Collision Indus., Inc.*, No. 4:22-CV-00659, 2023 WL 1819165, at *3 (M.D. Pa. Feb. 8, 2023). "[O]ne who seeks to construct a trust bears a heavy burden of proof; the evidence must be clear, direct, precise and convincing." *Roberson*, 580 A.2d at 41; *see also Hipple v. Hipple*, No. CV 12-1256, 2016 WL 320216, at *14 (E.D. Pa. Jan. 27, 2016).

It is indisputable that Losinger was the named beneficiary of the Plan's accounts. (Doc. 101; Doc. 102). The Estate now contends that "it was a mistake that Losinger ended up with the legal title in being named beneficiary." (Doc. 171, at 9). Pointing to deposition testimony from Estate representatives Brian Rolison ("Brian") and Rick Rolison ("Rick"), the Estate argues Rolison and Losinger's relationship ended poorly and as a result Rolison desired to name someone else as a beneficiary of the Plan. (Doc. 162, at 9; Doc. 163-1, at 71-72). Brian testified that after the break-up Losinger broke into Rolison's home and "stole all his stuff." (Doc. 163-1, at 72). No evidence of this incident has otherwise been introduced into the record. Meanwhile, Rick testified that it is his assumption that Rolison "would not have kept" Losinger as his beneficiary, despite having no evidence of his brother changing his beneficiary designation. (Doc. 163-2, at 28-29).

15

In making their constructive trust argument, the Estate relies heavily on the 1991 case *Spinner v. Fulton* 777 F. Supp. 398 (M.D. Pa.), *aff'd sub nom. Spinner v. Hartford Acc. & Indem. Co.*, 947 F.2d 937 (3d Cir. 1991). In *Spinner*, the court imposed a constructive trust for the benefit of a decedent's children after his life insurance policy was paid out to his estranged wife. *Spinner*, 777 F. Supp. at 404. As Losinger points out, *Spinner* is readily distinguishable from this case because in *Spinner*, the decent bought the challenged life insurance policy *after* becoming estranged from his wife and the estranged wife was not a named beneficiary, but received the funds based on a default beneficiary clause. 777 F. Supp. at 401, 404. Here, Losinger was the named beneficiary at the time the Plan was established and was awarded the Plans' funds pursuant to the plan documents rule under ERISA. (Doc. 103). Beyond these distinctions, Losinger maintains that "the estate has not produced any evidence that the ongoing designation was not a gift to Losinger in return for moving to Sullivan County, paying for upkeep of the home, residing in the home while Rolison dated another woman, or for the love they shared that Rolison wouldn't take to the level of marriage and children." (Doc. 177, at 5). Moreover, she argues that "self serving statements made by the Rolison brothers" are insufficient for the Estate to meet its burden. (Doc. 177, at 7-8).

Considering these arguments, the Court agrees that whether Losinger has been unjustly enriched by the distribution of the Plan's funds turns on whether the Estate can show by "clear, direct, precise, and convincing evidence" that Losinger's continued designation as beneficiary of the Plan was a mistake. *See In re Brockway Pressed Metals, Inc.*, 363 B.R. 431 (Bankr. W.D. Pa. 2007), *subsequently aff'd sub nom. In re Brockway Pressed Metal, Inc.*, 304 F. App'x 114 (3d Cir. 2008). It is clear from the record that Losinger and Rolison were dating in

16

1987 and broke up in 1989. (Doc. 44, ¶ 14; Doc. 163-1, at 77-78; Doc. 176-8, at 132-33). The record also reflects, however, that as early as the mid-1990s and as late as the early 2000s, well after the couple split up, Rolison was aware that Losinger was his designated beneficiary under the Plan. (Doc. 163-1, at 77-78). As discussed *supra*, this Court has already concluded that Rolison was well-informed on how to change his beneficiary designation and was "routinely noticed" of the Plans' supporting documents. (Doc. 103, at 4; Doc. 111, at 5 n.1). Rolison logged into his online beneficiary account "multiple times prior to his death, realized he had not designated an online beneficiary, and chose not to designate such" despite knowing that, without doing so, his paper beneficiary would remain. (Doc. 103, at 12). There is nothing concrete in the record to suggest Rolison had any misconceptions about who his paper designation was. Accordingly, the record does not clearly, precisely, directly, or unambiguously support the Estate's assertion that Rolison maintained any false impressions about his beneficiary designation or wished to designate someone other than Losinger under the Plan, including the Estate. (Doc. 103, at 12).

Nevertheless, the Estate argues "[r]ecent discovery has confirmed that Jeffrey Rolison operated under an understanding or state of mind, revealed to him by his brother Brian in the mid-1990s, that Losinger was no longer his beneficiary and had been removed[.]" (Doc. 171, at 5). However, the only evidence the Estate presents to support this presumption is its own self-serving deposition testimony that is largely based on speculation. (Doc. 176-8). For example, during his deposition Rick admitted that he has no evidence that Rolison intended to change his beneficiary designation, asserting just that his brother "would have never," left the money to Losinger, as a gift or otherwise because "[Rolison] and her separated and were

done." (Doc. 163-2, at 36). Brian, meanwhile, testified that while he never saw Rolison's beneficiary designations, Rolison told him he removed Losinger as a beneficiary to the Plan and instead designated Mary Lou Murray and his mother. (Doc. 163-1, at 18, 49, 80). This assertion is not supported anywhere else in the record, including in Rick's testimony. (Doc. 163-2, at 28). Thus, the Estate's testimony, which is largely based on inferences, speculation, and hearsay, is insufficient to create a question of material fact. *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (finding self-serving testimony is insufficient to defeat summary judgment when other evidence of record rebuts the testimony); *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("We note that an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment"); *Mooney v. Greater New Castle Dev. Corp.*, 510 Pa. 516, 510 A.2d 344, 347 (1986); *see also Massachusetts Mut. Life Ins. Co. v. Curley*, 459 F. App'x 101, 108 (3d Cir. 2012) (denying summary judgment request for formation of a constructive trust where claimants failed to show unjust enrichment via mistake by "clear, direct, precise, and convincing" evidence); *see Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Other than this insufficient testimony, the Estate puts forward no evidence or caselaw from which the Court may deduce it is entitled to a constructive trust. Accordingly, the Estate has not met its burden to produce "clear, direct, precise, and convincing evidence" that Rolison mistakenly failed to change his beneficiary designation. *In re Brockway Pressed Metals, Inc.*, 363 B.R. at 456. Without more, no reasonable fact finder could conclude otherwise.

18

Because this Court determined that, under the ERISA, Losinger is the rightful, legal beneficiary of the Plan's funds, the Estate cannot argue that she acted in bad faith, violated an express or implied duty to the Estate, conducted fraud, demonstrated lack of good conscience, did any wrongdoing, or breached of a confidential relationship. Thus, the Estate has not met its burden to prove Losinger has been unjustly enriched by Rolison's designation of his Plan's funds such that a constructive trust should be imposed on its behalf. Consistent with this Court's previous ruling on Losinger's behalf, Losinger's motion for summary judgment will be **GRANTED** and the Estate's motion for summary judgment will be **DENIED**. (Doc. 103; Doc. 161; Doc. 164). The Estate's cross-claim against Losinger will be **DISMISSED**.

### 4. CONCLUSION

Based on the foregoing, P&G's motion for summary judgment (Doc. 166) is **GRANTED**, Losinger's motion for summary (Doc. 161) is **GRANTED**, and the Estate's motions for summary judgment (Doc. 164; Doc. 165) are both **DENIED**. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: April 29, 2024                                     *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**