UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PROCTOR & GAMBLE U.S. BUSINESS SERVICES COMPANY, *As Plan Administrator And On Behalf Of The Procter & Gamble Profit Sharing Trust and Employee Stock Ownership Plan,* et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ESTATE OF JEFFREY ROLISON, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:17-CV-00762<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Procter & Gamble filed this lawsuit under the Employee Retirement Income Security Act ("ERISA") 29 U. S. C. §§ 1001 *et. seq.* in its capacity as plan administrator of The Procter & Gamble Profit-Sharing Trust and Employee Stock Ownership Plan and the Procter & Gamble savings plan. (Doc. 1). Proctor and Gamble brought this action to determine who is entitled to decent Jeffery Rolison's ("Rolison") investment plan funds following his death in 2015. (Doc. 1). Proctor and Gamble's initial complaint was filed in April of 2017 against Margaret Losinger ("Losinger") and the Estate of Jeffrey Rolison ("the Estate"). (Doc. 1). Before the Court now are two motions for reconsideration of this Court's April 29, 2024 Memorandum and Order as it relates to Losinger and Proctor and Gamble filed by the Estate. (Doc. 225; Doc. 226). For the following reasons, these motions for reconsideration will be **DENIED**. (Doc. 225; Doc. 226).

I. **BACKGROUND**

Having laid out the factual background of this case in the challenged April 29, 2024, Memorandum, the Court will provide an abbreviated version here. This case revolves around the investment funds Rolison accrued while employed at Proctor and Gamble. (Doc. 222, at 2). In accordance with ERISA, these funds were distributed to Losinger, the named beneficiary on his plans. (Doc. 222, at 2). The Estate challenged this distribution, seeking the creation of a constructive trust in its favor. (Doc. 222, at 13). The Estate also asserted a crossclaim against Proctor and Gamble, the plan administrator, claiming it breached its fiduciary duties to Rolison. (Doc. 222, at 6).

On April 29, 2024, the Court filed a Memorandum and an Order addressing four motions for summary judgment, one filed by Proctor and Gamble, one filed by Losinger, and two filed by the Estate. (Doc. 161; Doc. 164; Doc. 165; Doc. 166; Doc. 222; Doc. 223). The Court granted both Proctor and Gamble and Losinger's motions for summary judgment and denied both of the Estate's motions for summary judgment. (Doc. 161; Doc. 164; Doc. 165; Doc. 166; Doc. 222, at 2-1; Doc. 223). Judgment was issued in favor of Proctor and Gamble and Losinger and against the Estate. (Doc. 224).

The Estate filed the instant motions for reconsideration on May 13, 2024, and May 14, 2024, respectively, challenging the Court's April 29, 2024, Memorandum and Order. (Doc. 222; Doc. 223; Doc. 224 Doc. 225; Doc. 226). The Estate filed both briefs in support of its motions of May 14, 2024. (Doc. 227; Doc. 228). On May 20, 2024, Losinger filed a brief in opposition to both motions for reconsideration docketed incorrectly as a reply brief. (Doc. 229). On May 21, 2024, Losinger filed a properly docketed brief in opposition to the motions.

(Doc. 30). On May 28, 2024, Procter & Gamble filed a brief in opposition to the Estate's second motion for reconsideration. (Doc. 226; Doc. 233). On June 7, 2024, the Estate filed a reply brief to Proctor and Gamble's brief in opposition. (Doc. 236). Accordingly, the motions are ripe and ready for discussion.

## II. STANDARD OF REVIEW

### A. MOTION FOR RECONSIDERATION

A motion for reconsideration is a device of limited utility which may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Cas. Co. v. Diversified Indus.*, Inc., 884 F. Supp. 937, 943 (E.D.Pa.1995).

### B. MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*,

477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. See *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**III.    DISCUSSION**

"A motion for reconsideration [ ] does not entitle a party to a second bite at the apple." *Ippolito v. Carpenito*, 2020 WL 1847671, at *1 (D.N.J. Apr. 13, 2020). The Estate improperly attempts to use the instant motions for reconsideration to re-litigate its claims seemingly without regard to the standard it is subjected to.[1] (Doc. 225; Doc. 226; Doc. 227; Doc. 228). The Estate does not argue any intervening change in controlling law or the availability of new evidence. Instead, the Estate argues the Court's decision was "patently erroneous in multiple respects." (Doc. 227, at 227; Doc. 228, at 1). While it is unclear to the Court why the Estate filed two separate motions to address the Court's April 29, 2024, Memorandum and Order, generally, the Estate takes issue with the Court's application of Third Circuit precedent, the Court unfairly favoring the Estate's adversaries, and the Court's treatment of its own "dicta." (Doc. 227, at 1-4, 15-16; Doc. 228, at 1-4). Having reviewed the parties' filings and the record before it, the Court concludes that the Estate has failed to meet it burden for reconsideration. "Mere dissatisfaction with the Court's ruling is not the basis for such a reconsideration[.]" *Rock v. Voshell*, No. 05-1468, 2005 WL 3557841, at *1 (E.D. Pa. Dec. 29, 2005). Thus, for the reasons set forth below, the Estate's motions will be **DENIED**. (Doc. 225; Doc. 226).

---

[1] Interpreting Attorney Gould's briefs is difficult; the briefs lack citations to the Court's previous Memorandum and Order and contain almost no citations to the record. (Doc. 227; Doc. 228).

A. THE COURT DID NOT ERRONEOUSLY APPLY THIRD CIRCUIT PRECEDENT REGARDING THE PLAN DOCUMENT RULE

On July 21, 2020, pursuant to ERISA and the plan document rule, this Court directed Proctor and Gamble to award Rolison's investment plan funds to Losinger. (Doc. 103; Doc. 222, at 1). The Estate subsequently sued Losinger in pursuit of these funds and requested this Court create a constructive trust in its favor. In its first motion for reconsideration, the Estate focuses on this Court's conclusion that the record does not support the creation of a constructive trust. (Doc. 225; Doc. 227). In doing so, the Estate first takes issue with the Court's handling of the plan document rule. (Doc. 227, at 1-2). Specifically, the Estate argues that the Court failed to give effect to the Third Circuit's decision in *Estate of Kensinger v. URL Pharma, Inc.* (Doc. 227, at 1); 674 F.3d 131 (3d Cir. 2012). According to the Estate, *Kensinger* "provides that the Plan Document Rule should have no application to the Court's determination of the cross-motions for summary judgment before it." (Doc. 227, at 1). Losinger does not respond directly to this contention. (Doc. 230).

*Kensinger*, and the Supreme Court's decision in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, requires courts to ensure that under ERISA, plan benefits such as the ones at issue here are distributed according to the plans document rules, or the last name beneficiary on the plan. 674 F.3d at 133-34; 555 U.S. 285, 297-300 (2009). The *Kensinger* court held that this requirement does not bar suit for recovery against beneficiaries after the benefits have been paid. 674 F.3d at 137. That is exactly what the Court has addressed here, a claim against beneficiary Losinger for the establishment of a constructive trust in the Estate's favor after the benefits were paid. (Doc. 222, at 13-19). Notably, the *Kensinger* court did not hold that such beneficiaries necessarily lose these lawsuits, or that the plan documents are no

7

longer relevant evidence that can be reviewed when determining who is to recover plan benefits. 674 F.3d at 137-38. Instead, the *Kensinger* court explained that once the funds are distributed, ERISA is simply no longer implicated. 674 F.3d at 138.

Contrary to the Estate's reading of *Kensinger*, this precedent does not preclude the manner in which the Court addressed the plan document rule in its April 29, 2024, Memorandum. 674 F.3d at 136. In fact, this Court agrees with the Estate's conclusion that the rule was satisfied once Losinger received the plan funds in escrow and that the Estate was entitled to assert a claim against Losinger in pursuit of these funds once they were distributed. (Doc. 22; Doc. 227, at 1-2). However, the Court is unable to meaningfully address the Estate's contention that "after the Rule was fulfilled, it had, as a matter of law, no force, application, or relevance to litigation of the Estate's cross-claim." (Doc. 227, at 2). Explanation of the application of the plan document rule was a necessary step in clarifying the posture of this litigation. Once this posture was established, the Court addressed the Estate's constructive trust claim through careful review of the record and did not base its decision solely on the fact that Losinger was the named beneficiary on the Plan's accounts. (Doc. 222, at 15). Considering this, the Estate's statements that the Court erred when it "assumed the Rule authorized it to preference Losinger in all respects in this litigation," and that the Court "without justification or explanation conceived a presumption at odds with the Rule, namely that it conferred some equitable or beneficial entitlement to Rolison's accounts, which presumption it then improperly assumed the Estate had to rebut to prevail on the cross motions," have no legal basis. (Doc. 222, at 15; Doc. 227, at 2).

The Court's conclusion is consistent with the demands of *Kensinger*. 674 F.3d at 133-36. While the Estate may disagree, "mere disagreement with the court does not translate into a clear error of law." *Mpala v. Smith*, No. CIV. 3:CV-06-841, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007), *aff'd*, 241 F. App'x 3 (3d Cir. 2007). Accordingly, the Estate's motion for reconsideration is **DENIED** on this basis. (Doc. 225).

> B. THE COURT DID NOT "BECOME UNMOORED" BY ITS APPLICATION OF THE THIRD CIRCUIT CASE *SPINNER V. FULTON* AND WAS NOT MISLED BY LOSINGER'S "GLIB" ASSERTIONS.

The Estate also takes issue with this Court's analysis of the Third Circuit case *Spinner v. Fulton*. (Doc. 227, at 5-6); 777 F. Supp. 398 (M.D. Pa.), *aff'd sub nom. Spinner v. Hartford Acc. & Indem. Co.*, 947 F.2d 937 (3d Cir. 1991). In *Spinner*, the court imposed a constructive trust for the benefit of a decedent's children after his life insurance policy was paid out to his estranged wife. 777 F. Supp. at 404. As the Court stated in its April 29, 2024, Memorandum, "*Spinner* is readily distinguishable from this case because in *Spinner*, the decedent bought the challenged life insurance policy after becoming estranged from his wife and the estranged wife was not a named beneficiary, but received the funds based on a default beneficiary clause. 777 F. Supp. at 401, 404." (Doc. 222, at 16). As this Court previously noted, "Here, Losinger was the named beneficiary at the time the Plan was established and was awarded the Plans' funds pursuant to the plan documents rule under ERISA," not a default beneficiary rule. (Doc. 222, at 16). In its critique of this Court's handling of Spinner, the Estate fails to account for this distinguishing fact. Instead, the Estate argues that its "evidence fulfills all of *Spinner's* decision requirements," without defining these requirements or citing to any evidence, and elaborates:

> Underlying *Spinner* and all law relevant to this case is the basic social and legal presumption that only those who are natural objects of a person's bounty are

entitled to or justly have an expectancy in that person's property and this category only includes immediate family and one in deeply committed relationship (such as, domestic partner, cohabitor). This is a presumption that arises out of fundamental justice and fairness, or equity. The expression of its contradiction will be seen by humanity as unjust.

(Doc. 227, at 20).

The Court disagrees that its decision "endorses the proposition that a long past girlfriend should have her ex-boyfriend's fortune over his family based on the random and stale persistence of an enrolment card when she had no relationship with the boyfriend and their lives were led apart with with [sic] other people meaningful to them." (Doc. 227, at 6). This Court's conclusion turned on review of the record and the Estate's citations thereto in its briefs. Here, the Estate has again failed to cite to any admissible evidence supporting its position that Rolison's plan designation must be disturbed. (Doc. 227). Instead, the record supports that Rolison was informed of his beneficiary designation and nonetheless failed to change it. (Doc. 222, at 11). The mere fact that the Estate consists of Rolison's progeny is not enough. This Court is not entitled to decide otherwise.

"Under Pennsylvania and federal law, a constructive trust may be imposed as 'an equitable remedy designed to prevent unjust enrichment.'" *Hipple v. Hipple*, No. CV 12-1256, 2016 WL 320216, at *13 (E.D. Pa. Jan. 27, 2016) (quoting *Yohe v. Yohe*, 353 A.2d 417, 420-21 (Pa. 1976). "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that he will be unjustly enriched if he were permitted to retain it." *Hercules v. Jones*, 609 A.2d 837, 841 (Pa. Super. Ct. 1992) (citations omitted); *see also Hipple*, 2016 WL 320216, at *13. Importantly, while courts have discretion in determining when to impose a constructive trust, "[o]ne who seeks the

10

imposition of a constructive trust must do so by clear, direct, precise and convincing evidence." *Hercules*, 609 A.2d at 841. "The certain guidelines in the law of constructive trusts are: 1) the ultimate test of whether to grant such a trust is whether it is necessary to prevent unjust enrichment; and 2) the imposition of the trust does not require proof that the parties intended it." *Spinner*, 777 F. Supp. at 402. Still, the requesting party must show by *clear and convincing evidence* that unjust enrichment will occur if not for the imposition of the requested constructive trust. *Spinner*, 777 F. Supp. at 402. Thus, the Court here again considers whether Losinger be unjustly enriched if the Court stands by its previous decision. Again, the Court cannot conclude so. Setting aside Rolison's intent, which is irrelevant to the instant inquiry, the Court is left to consider whether Losinger obtained a benefit that would be unconscionable for her to retain. *See Massachusetts Mut. Life Ins. Co. v. Curley*, 459 F. App'x 101, 108 (3d Cir. 2012). "There are several grounds from which unjust enrichment can result: breach of a confidential relationship, fraud, duress, undue influence, or mistake." *Curley*, 459 F. App'x at 108. Based on the record before it, and the lack of citations to the record by the Estate, the Court cannot in good conscious conclude that any of these grounds are present here. Arguably, the only relevant ground for unjust enrichment in the case could be mistake. However, as the Court has concluded numerous times, the record reflects Rolison knew or should have known Losinger was designated as the beneficiary of the challenged funds. (Doc. 222, at 17). As this Court stated, "the record supports that Rolison was affirmatively and consistently notified for 13 years that his online account lacked the designation of a beneficiary and that, without an online beneficiary, his paper beneficiary designation [Losinger] remain valid." (Doc. 103, at 12; Doc. 111, at 5 n.1; Doc. 125, at 12; Doc. 222, at

11

11). This considered, the Estate has failed to point to any admissible evidence in the record that supports Losinger designation was a mistake, other than the fact that she was Rolison's somewhat estranged ex-girlfriend. While the Court may draw inferences or speculate as to whether this alone suggests her designation was a mistake, such speculation "can never create a material factual dispute sufficient to defeat entry of summary judgment, and it is not clear, direct, precise and convincing evidence." *Curley*, 459 F. App'x at 108 (internal quotations and citation omitted). This Court does not have authority to decide otherwise, especially on a motion for reconsideration, which "may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided." *Mpala*, 2007 WL 136750, at *2. Again, the Estate "fails to cite to any change in intervening law or clear error of fact or law that necessitates correction." *Mpala*, 2007 WL 136750, at *3. Accordingly, the Estate's motion for reconsideration is **DENIED** on this basis. (Doc. 225).

    C. THE COURT DID NOT ERR IN APPLYING BURDENS OF PROOF

The Estate further complains that "[b]ecause of its preferment of Losinger and presumption of right in her, the Court assumed without basis or explanation that it was the Estate's burden alone to prove its right to the remedy of constructive trust." (Doc. 227, at 9). This is not so. The law is clear, "[o]ne who seeks to construct a trust bears a heavy burden of proof; the evidence must be 'clear, direct, precise and convincing.'" *Nat'l City Bank of Pennsylvania v. Stash Bros.*, No. CIV. A. 97-0731, 1998 WL 684182, at *2 (W.D. Pa. May 22, 1998) (quoting *Masgai v. Masgai*, 460 Pa. 453, 460, 333 A.2d 861, 865 (1975)). Further, "unless the evidence of the existence of [a constructive trust] is of the highest probative value, equity

should not act to convert an absolute ownership into an estate of lesser quality." *Masgai*, 333 A.2d 861, 333 A.2d at 865. The Court did not extend Losinger preferential treatment in assessing whether the Estate's burden was met, as the Estate had the burden of proof as the party seeking the creation of a constructive trust. *Masgai*, 333 A.2d 861, 333 A.2d at 865. As this Court previously ruled, the Estate did not meet this burden. (Doc. 222, at 18-19); *see Masgai*, 333 A.2d 861, 333 A.2d at 865. Despite the Estate's argument otherwise, Losinger was subjected to a burden of proof as a movant for summary judgment. This Court found that she did meet her burden by establishing no reasonable fact finder could find in favor of the Estate on its claim for a constructive trust. (Doc. 222, at 18-19; Doc. 227, at 10). The Estate's argument is not supported by the introduction of any new case law or citations to the record or anything but baseless accusations that the Court "prefers" Losinger and "presumes right in her." The Estate's motion for reconsideration is **DENIED** on this basis. (Doc. 225).

D.  THE COURT DID NOT BASE ITS DECISION ON "DICTA"

Finally, the Estate submits the following in support of its second motion for reconsideration:

> The Estate moves for reconsideration because the Court's Decision made patent errors which deprived it of fair hearing. These included its patent error of imposing preclusive effect to dicta uttered by Judge Mariani to determine the Estate's case, when the which dicta was not entitled to such preclusion because it did not represent findings made in the ultimate decision concerned. By this dicta, the Court ignored and factually determined its case on dicta when the Estate's case was factually complex and nuanced and showed the Company to be in violation of multiple standards of the fiduciary duty of disclosure.

(Doc. 228, at 1).

The Estate goes on to explain:

13

> Collateral Estoppel (not law of the case) should have benefitted the Estate and not Losinger or Proctor & Gamble as occurred with the Court's adjudication. The Court erred in applying collateral estoppel against the Estate to limit consideration of its case and thus in favor of its opponents. Losinger and P&G teamed up to insist that certain dicta of Judge Mariani in his Memorandum deciding the earlier summary judgment proceeding pre-determined certain issues central to this adjudication.
>
> (Doc. 228, at 2).

In response to these arguments, Proctor and Gamble correctly points out that "although the Estate repeatedly describes Judge Mariani's factual and legal findings as 'dicta' it provides no citation of authority or other support to suggest that Judge Mariani's findings should be treated as being made incidentally, in passing, or not a necessary part of the rationale for his decision." (Doc. 233, at 3).

As highlighted by Proctor and Gamble, the Estate's arguments fail on several fronts. (Doc. 233, at 3-5). First, the Court did not rely solely on its past decisions, or as the Estate calls it, "dicta," when concluding that "Rolison was affirmatively and consistently notified for 13 years that his online account lacked the designation of a beneficiary and that, without an online beneficiary, his paper beneficiary designation would remain valid." (Doc. 222, at 11). Instead, the Court looked to the fact that the Estate failed to put forward any admissible evidence in support of its position. (Doc. 222, at 11; Doc. 233, at 3). Also as provided by Proctor and Gamble, the Court "cited to numerous pieces of evidence in the record, including several facts identified in the parties' statements of facts submitted with their summary judgment pleadings." (Doc. 222; Doc. 233, at 3). Second, the alleged "dicta" reviewed by the Court consisted of previous findings and evidence that were again before the Court. Thus, in accordance with the law of the case doctrine, this Court acknowledged that courts are not obligated to revisit issues already decided. See *In re Katz*, 220 B.R. 556, 563 (Bankr. E.D. Pa.

1998) (explaining that the law of the case doctrine is based on "the principal that courts will not reopen what has already been decided by them"). However, having explained the doctrine and its application to this case, the Court still conducted a review of the record "[s]etting aside the Court's previous findings," and came to the same conclusions previously decided. (Doc. 222, at 11). The Estate's argument that the Court solely relied on dicta is thus false. Third, as Proctor and Gamble explains, the Estate clearly attempts to relitigate issues previously briefed by the parties and decided by this Court in making their arguments for reconsideration. (Doc. 233, at 4). In doing so, the Estate pays little deference to the standard to be applied to motions for reconsideration. Taking all of this into account, the Court again concludes the Estate has failed to meet its burden for reconsideration. The Estate's second motion for reconsideration is therefore **DENIED**. (Doc. 226).

### IV. CONCLUSION

Based on the foregoing, the Estate's motions for reconsideration are both **DENIED**. (Doc. 225; Doc. 226).

An appropriate Order follows.

Dated: October 23, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**